510

ROY PRESTON et al., Trustees of the Maggart Methodist Church, Appellants, v. STALLIE LEE BUSH, Appellee.—408 S.W.(2d) 675.

Middle Section, at Nashville. June 24, 1966.

Certiorari Denied by Supreme Court, November 21, 1966.

Solon Fitzpatrick, Carthage, for appellants.

Edward M. Turner, Carthage, for appellee.

HUMPHREYS, J. On January 8, 1902, James P. McKinney executed the following deed:

*"CERTIFIED COPY OF DEED*

This indenture made and entered into the Eighth day of January A.D. One thousand nine hundred and two between the James P. McKinney of the County of Smith and State of Tennessee, of the one part, and the Trustees of the Methodist Episcopal Church, and their successors in office on the Maggart Church in the County of Smith, State of Tennessee of the other part. To-wit - D. B. Harville, J. N. Grisham, W. T. Bush, B. P. Murry (Massy), L. B. Dickens, Joshua Dickens, D. S. Dickens, C. C. White and S. G. White, in trust for the use and benefit of the Ministry and Membership of the Methodist Episcopal Church in the United States of America; Subject to the discipline usage and ministerial appointments of such Church, as from time to

512

time authorized and declared and if sold the proceeds shall be disposed of and used in accordance with, the provisions, of said discipline; Witnesseth that the said James P. McKinney for and in consideration of the sum of three Hundred dollars paid to me, cash in hand the receipt of which is hereby acknowledged, have this day bargained and sold, and do hereby transfer and convey to the trustees of the Methodist Episcopal Church, and their successors in office as named above one lot or parcel of land; being or lying in the Eleventh Civil District in the town of Maggart of the County of Smith, State of Tennessee, (description omitted) Containing by estimation $2\frac{1}{2}$ acres be the same more or less. To have and to hold the same forever; free and clear from all encumberances whatsoever together with all privileges, rights and profits and everything thereunto belonging or in any wise appertaining to the above described lot or parcel of land, and the said James P. McKinney doth covenant and agree to bind himself, his heirs executors, administrators and assigns to warrant and forever defend the right and title of the above described lot or parcel of land from all and every part, just claim of all and every person or persons, whatever. I further affirm I am lawfully seized of said property, and have a perfect right to convey and transfer the same unto the said trustees and their successors in office forever. In testimony whereof the said James P. McKinney hereunto sets his hand and seal the day and date above written, signed, sealed and delivered in the presence of

J. P. McKinney''

Tr. pp. 9-11, Vol. 1.

On December 22, 1962, a majority of the members of the Board of Parsonage Trustees of the Maggart-Mt. Zion

Methodist Church Charge deeded one acre more or less of this tract and the house on it to Stallie Lee Bush. Bush entered into possession of the house and land.

Thereafter, on July 20, 1963, appellants brought this suit in ejectment to recover possession of the house and land, alleging that they were successor trustees to those named in the 1902 deed and were the holders of the legal title to the house and land, and entitled to possession of it for the use and benefit of the Maggart Methodist Church.

Appellee Bush defended the suit on the ground the deed under which appellants claimed was ambiguous, and that when properly construed in the light of the fact that there was no Maggart Methodist Church in existence at the time of the execution of the deed, the only Methodist Church at Maggart, Tennessee, being Bank's Chapel Methodist Church, the deed was actually a conveyance of the land in question to the ''Trustees on the Maggart Charge'', which charge consisted at that time of three churches, namely Bank's Chapel, Bowlings Branch, and Mt. Zion.

Bush also defended on the further ground appellant trustees were not successors of the original trustees, as they were trustees of the Maggart Methodist Church, whereas the original trustees were in fact the trustees of the Maggart Charge, actually representing the charge which then consisted of the aforementioned churches.

At this point it should be mentioned that appellants attacked Bush's deed for non-compliance with the Methodist Church doctrine and discipline regulating the sale and alienation of this property, and much proof was taken on this issue. However, we think we must pretermit

any consideration of this issue. For, as appellants' suit is in ejectment, they would only be entitled to win on the strength of their own title, not on the deficiencies in the title of appellee.

There must be literally hundreds of cases in which appellate courts have said that one who sues in ejectment must recover on the strength of his own title and not the weakness of the defendant. Perhaps Winnard v. Robbins, 22 Tenn. (3 Humph.) 614, makes a more interesting statement of the rule than some of the others for it is there observed that where neither party has any legal title to the premises in controversy, the plaintiff cannot have judgment, as it would be turning out one trespasser to make room for another. For reference to many other cases to this same effect see 8 Tenn.Digest, Ejectment. sec. 9(2).

We also point out that with respect to this last mentioned matter, it can make no difference that one of the purposes of this suit is to remove Bush's deed as a cloud on the appellants' title. While the suit is for the dual purpose of ejectment and removing Bush's deed as a cloud, Bush is in possession of the land and appellants' entire right to have any of the relief which it seeks would depend altogether upon their holding the legal title as trustees. In other words, the prayer for removal of Bush's deed as a cloud could only be granted upon it first being found the trustees hold the legal title. If they do hold title, Bush's deed is a nullity and would be stricken. If they do not hold title it is of no consequence to them whether the discipline has been followed or not, or whether there is a cloud, or not.

The case was tried on oral evidence, in the course of which the Chancellor treated the 1902 deed as ambiguous

so that evidence of the circumstances and conditions prevailing at the time of its execution might be offered and considered. And found that at the time of the 1902 deed there was no Maggart Methodist Church. That at that time and for many years thereafter the church now known as Maggart Methodist Church, was known as Bank's Chapel Methodist Church, which was part of the Maggart Charge. The Chancellor then went on to hold that the provision in the 1902 deed reading, "Trustees of the Methodist Episcopal Church, and their succesors in office *on the Maggart Church* in the County of Smith, State of Tennessee \* \* \*" is the only mention of the Maggart Church in the deed and that the word "Church" was a clerical error and should be read as "Charge". So that the title to land vested in Maggart Charge Trustees, who held the title in trust for the entire Charge.

The Chancellor also held there had been substantial compliance with requirements of the doctrines and discipline of the Methodist Church in the transfer of the property from the Charge Trustees to appellee Bush. And then dismissed complainants' bill with costs.

The complainants have appealed and have assigned errors which complain in detail of all of the adverse actions of the Chancellor.

Of course, the primary question for our determination is whether appellants hold title to the real property they seek to recover. If they do, and are entitled to possession for the use and benefit of the Maggart Methodist Church, they are entitled to a decree ejecting appellee Bush and placing them in possession, without regard to the extent of compliance on the part of Bush's trustee grantors with the church discipline. However, if appellant trustees do not have the title, it can make no difference to them in the

capacity in which they sue and in the form in which they have cast their suit that Bush is in possession under a deed which may not conform to the Methodist Church doctrines and discipline.

In considering this primary question it is necessary to consider the legality of the Chancellor's finding the deed ambiguous so as to permit the introduction of extrinsic evidence. Appellants have invoked and relied on the parol evidence rule and have contended throughout that it applies so as to exclude any evidence as to the facts and circumstances existing at the time of the execution of the 1902 deed.

The appellants also contend that the Chancellor's opinion and decree finding the word ''Church'' should be read ''Charge'' is outside the pleadings, and that such a decree could only be entered in a suit to reform the 1902 deed for fraud, accident or mistake.

Of course, appellee Bush is satisfied with the Chancellor's opinion and decree, and supports it by citation of authority and argument.

This somewhat lengthy statement brings us to a consideration of the parole evidence rule. And, we agree with the Chancellor, that the deed is ambiguous and that parole evidence was admissible to construe and apply it. We think that under well recognized exceptions to the generality of the parole evidence rule the evidence offered and considered by the Chancellor was admissible and legal.

Turning first to the deed, we find that although it is valid in that it is not patently ambiguous, it does present some anomolies which cause one to suspect it is not all it seems. In the first place, in describing the grantees, we

find this description: "and the trustees of the Methodist Episcopal Church, and their successors in office,". Upon reading this one immediately wonders why, if the deed was for the benefit of the Maggart Methodist Church, the trustees were not so described. Ordinarily, the trustees would have been described as "the trustees of the Maggart Methodist Episcopal Church, and their successors in office." But they were not so described, and this fact introduces the question whether the trustees were trustees of the Methodist Episcopal Church or trustees of the Maggart Methodist Church.

This question is made more serious by what follows, which is: "and their successors in office on the Maggart Church in the County of Smith, State of Tennessee, of the other part." Upon reading this statement one is struck by the fact that the preposition "on" is awkwardly and unusually employed, and this is difficult to understand until consideration is given to the fact, which appears in the Methodist Church doctrine and discipline and other evidence in the record, that the preposition "on" is customarily and usually used in referring to a Charge of the Methodist Church. Moreover, while it might be hypercritical to point it out, while the description of the location, "in the County of Smith, State of Tennessee * * *" would be descriptive of the Church Charge at that time, it is not descriptive of a particular church, which would be located at a particular place, in a particular civil district of a county.

But, passing on. We find that the property is not conveyed to trustees of a Maggart Methodist Church, but "to the Trustees of the Methodist Episcopal Church and their successors in office". So that here again we have the

trustees described as trustees of the parent church rather than as trustees of the Maggart Methodist Church.

Finally, who is the beneficiary of this trust? Is it the Maggart Methodist Church, or the Methodist Church congregation at the Maggart Church, or any of the other combinations of words which would ordinarily be employed to describe the Maggart Methodist Church which now claims the benefit of the property through trustees it has elected? No, the property is conveyed in trust ''for the use and benefit of the ministry and membership of the Methodist Episcopal Church in the United States of America; subject to the discipline, usage and ministerial appointments of such church, as from time to time authorized and declared and if sold the proceeds shall be disposed of and used in accordance with the provisions of said discipline;''.

In fact, the Maggart Church is not mentioned in the deed except in one instance, and there it follows the preposition ''on'' which is customarily used in describing a Charge of the parent church, and could only awkwardly and unusually be used in reference to a single church congregation.

We are aware it can be argued that this broad description of the beneficiary of the trust includes the Maggart Methodist Church and its congregation, but that does not alter the fact that it includes other such churches and, also, more properly refers to a larger segment of the Methodist Church organization such as a Charge than to the smallest component of church organization, a local church and congregation.

Absent all other facts and circumstances, the decree of the Chancellor dismissing appellants' bill might very well

be sustained alone on the proposition that under the express provisions of the 1902 deed the Maggart Church is not such a beneficiary church as to authorize it to elect its own parsonage trustees, and to take charge of this church property for its own exclusive use and benefit. That since the appellant trustees claim title as successors to the 1902 trustees only by reason of their being elected as parsonage trustees of the Maggart Methodist Church, and since the named beneficiary in the 1902 deed is not the Maggart Church, which is only included at all because of the broad description of the beneficiary, "the ministry and membership of the Methodist Episcopal Church in the United States of America", this alone could have been a basis of the Chancellor's decree dismissing the complainant trustees' suit in ejectment. For, how can one who is nowhere named as a beneficiary, and whose name appears in the trust instrument only in connection with a description of the trustees, claim that it alone holds the legal title and beneficial interest and is entitled to elect successor trustees and have the exclusive possession and use and benefit of property against a grantee of trustees who more nearly fit the description in the deed than they do? We don't think this can be done.

Passing on to the questions presented by the assignments. As we have indicated, we think extrinsic evidence of the facts and circumstances existing at the time of the execution of the 1902 deed was admissible under well-recognized exceptions to the parole evidence rule. In 23 Am.Jur.2d Deeds, sec. 54, we find it stated, "Extrinsic evidence is admissible to identify the person or persons intended to be designated by the name used for the grantor in a deed * * *." Again, in 15 Am.Jur2d, Charities, sec. 108, we read, "Where the description of the

beneficiary applies equally and precisely to two or more objects, parole evidence of surrounding facts and circumstances at the time of or prior to the execution of the will is admissible to assist in ascertaining which one was meant as the beneficiary.''

This rule is particularly applicable in view of the general description of the beneficiary in the 1902 deed.

In 32A C.J.S. Evidence sec. 961(3) p. 431, we find: ''Where a grant is issued to a certain person, but no person of that name ever existed, it is a case of latent ambiguity and evidence is admissible to show who was the person intended''.

In this same authority in sec. 960(f) it is stated: ''Parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intentions of the parties and properly construing the writing. In other words, the court may, by receiving evidence of the circumstances under which the writing was made, place itself in the situation of the parties who made it, and to that extent look in on their minds and so judge of the meaning of the words, and of the correct application of the language to the thing described, from the point of view of the parties who wrote or executed the instrument.''

This authority goes on to point out that evidence of this nature is received to elucidate the meaning of the words employed and not import into the writing an intention not expressed therein. It is recognized however, and so stated, that an intimation of a latent ambiguity is a basis for receiving such evidence.

In Faulkner v. Ramsey, 178 Tenn. 370, 158 S.W.2d 710 the court had for construction a deed with a conveying clause reading, "do hereby alien and convey to the said Zerl & Harlena Ramsey, equally, the land so purchased by them, to have and to hold the said land hereby intended to be conveyed, with the appurtenances, to the said Zerl and Harlena Ramsey, equally their heirs and alienees, * * *' " (Pp. 372-373, 158 S.W.2d p. 711). Evidently, simply because Zerl and Harlena Ramsey were husband and wife and so ordinarily might be expected to take and hold property as tenants by the entirety, the Chancellor, with the Supreme Court concurring, held this clause was ambiguous and ought to be construed in conjunction with the extraneous circumstances and surroundings at the time of the execution of the deed. The Supreme Court said: "The parole evidence rule does not operate to exclude extrinsic evidence which tends to aid, confirm, or explain a writing rather than alter it, or which assists the court in understanding and interpreting the language of the writing." (Pp. 374-375, 158 S.W.2d p. 712)

■ Finally, we consider applicable the rule that the parole evidence rule is not applicable in a controversy between parties on the same side of an instrument or their privies. 32A C.J.S. Evidence sec. 862, states the proposition this way:

"The rule excluding parol evidence to vary a writing is not applicable in a controversy between parties to the instrument whose interests thereunder are the same, or their privies, as in the case of contests between grantors, grantees, co-obligors, or co-obligees, or between privies of parties on the same side."

Much respectable authority is cited to sustain this statement, and we think it is sound law. In fact it is applied all the time in will construction cases where, though statements of intent are excluded for public policy reasons, evidence of facts and circumstances existing at the time of the execution of the will is always relevant. And, stemming as it does from the general proposition that parties on the same side of an instrument are not adversaries of the instrument, we adopt it as sound.

■ Turning to a consideration of the extrinsic evidence, we find there is a preponderance in favor of the contention of appellee Bush.

A photostatic copy of a part of the "Minutes of the 25th Annual Session of the Central Tennessee Conference of the Methodist Episcopal Church held at McLemoresville, Tennessee, October 9-13, 1902, Official Journal" discloses the following entry:

"MAGGART

Rev. J. W. Osment, Pastor of this Charge, showed the aggressive spirit that should dominate every Methodist preacher, by buying a very desirable property for a parsonage instead of renting it. His efforts on the Charge have been crowned with good revivals and many of the best people have been added to the Church."

Again, from the Journal of the 59th Session of the Central Tennessee Annual Conference, Methodist Episcopal Church, held at Baxter, Tennessee, September 23-27, 1936, we find the following:

"Several hundred dollars have been expended for improvements on the Bank's Chapel and Mt. Zion

Church, on the Maggart Charge, the Pastor, Brother Quarles, reported. The Mt. Zion Church which was erected last year, during the pastorate of J. D. Harris was dedicated Sunday, May 30th.''

Additionally, the record establishes that at least two of the trustees named in the 1902 deed, C. C. White and S. G. White, were members of the Mt. Zion Church on the Maggart Charge in 1902. And since the discipline of the Methodist Church requires that title to real property owned by an unincorporated local church shall be held by its own duly elected trustees, while charge property shall be held by trustees from two or more congregations, the claim of complainants is the more improbable.

We agree with the Chancellor that the evidence clearly and conclusively preponderates in favor of the proposition that there was no Maggart Church in 1902. And that the trustees in the 1902 deed were the trustees of the Maggart Charge. So that the word ''Church'' in the words ''On the Maggart Church'' is obviously a clerical error committed either in the execution of the deed or, more likely, when the original deed was recorded.

According to the testimony, the original deed is lost, and only a certified copy of its registration was available for the trial. We mention this not to impair the validity of certified copies of registered deeds, but simply because it is a fact of life that clerical errors are made, and the more times a document is copied the more likely this is to occur.

Another primary contention of appellants is that before defendant could have his decree, he would have had to seek affirmatively a reformation of the 1902 deed.

We have considered this contention and find it to be untenable.

We would first point out that the Chancellor's decree is not outside the pleadings. In essence, his decree does nothing but dismiss the original bill for failure on the part of complainants to prove they hold the legal title. Certainly, the Chancellor had a right to make this kind of decree on the pleadings before him. When, in the course of passing on an ambiguous title paper which is complainant's sole reliance, the Chancellor reaches certain conclusions of fact in regard thereto, the result of which is to apply the ambiguous document contrary to the contention of claimants, it cannot seriously be argued that this constitutes a reformation of a document so that the course pursued could only be carried out in the presence of pleadings presenting a classical case of reformation based on fraud, accident, or mutual mistake.

Chancery pleading and practice is not quite as strict in the regard under consideration as complainants argue. Under the application of the legal maxim boni judicis est lites dirimere, ne lis ex lite oritur, et interest reipublicae ut sint fines litium, and the equitable maxim that he who seeks equity must do equity, it has become the established practice to grant even affirmative relief on an answer. Long v. Garrison, 1 Tenn.App. 211, 212; Pomeroy Equity Jurisdiction, secs. 385-387; 1 Story Equity Jurisdiction, sec. 64.

We think the crux of the matter is that the appellee was not required, in order to prevail, to have the deed of 1902 reformed. His defense against the bill had only to be, and was, that complainants did not have the legal title to the property. This could be determined, as it was, upon a construction of complainant's title document. The

fact that this was also the source of appellee's title is immaterial since he did not have to use it as either a shield or a sword, but could rely on his possession and the inability of the Maggart Trustees to prove they had title.

In the course of reaching the conclusions above expressed we have considered all of the matters mentioned in appellants' brief, assignments of error and argument, and are of opinion that only the matters we have mentioned require attention in this opinion. Accordingly, the assignments of error are overruled and the decree of the Chancery Court dismissing the complainant's bill in ejectment is affirmed.

Shriver and Puryear, JJ., concur.