BILLY HAYES HALL, Appellant, v. PRESTON W.
LANE and CHARLES ARCHER, Appellees.
—444 S.W.2d 156

Western Section. March 25, 1968.

Certiorari Denied by Supreme Court August 19, 1968.

J. Howell Glover, John W. Hart, Union City, **for** appellant.

John M. Drane, Newbern, Sam C. Nailling, Union City, for appellees.

CARNEY, J. On April 4, 1961, the complainant, Billy Hayes Hall, brought an action of ejectment to establish

title to and to regain possession of a tract of land containing 45 acres more or less located adjacent to Reelfoot Lake just north of Samburg in Obion County, Tennessee. The case was tried in April, 1966, before the Chancellor on depositions without a jury. The Chancellor dismissed the bill and the complainant, Billy Hayes Hall, has appealed.

Preston W. Lane, formerly a resident of Obion County, Tennessee, now a resident of South Carolina, was the principal defendant. Complainant Hill claimed title under a deed from Amos Spicer dated December 21, 1957, recorded in the Register's office of Obion County, Tennessee, on December 21, 1957. The grantor, Amos Spicer, allegedly obtained title to the property by deed of W. E. Pratt dated February 21, 1936, but not recorded in the Register's office of Obion County until June 11, 1960.

The defendant Lane claimed title through a deed from John Peters and Sarah Peters Lance dated January 7, 1958, recorded in the Register's office of Obion County on January 8, 1958. John Peters and Sarah Peters Lance were the nephew and niece respectively of W. E. Pratt and remaindermen under the will of W. E. Pratt. The Pratt will was dated March 10, 1936, and probated in the County Court of Obion County on March 19, 1937, and devised a life estate in the Pratt land to Mrs. Helen Leasure Winters. The life tenant, Mrs. Winters, died in 1957.

Charles Archie was made a defendant as the farm tenant of Preston W. Lane. Archie claimed no title to the land.

The defendant Lane filed an answer denying that the complainant, Billy Hayes Hall, had ever been in the

possession of the property and denying that complainant Hall had any legal title to the property described in the original bill. The answer further averred that the deed from Spicer to Hall was void because Spicer never had any title to the property; that the purported deed from W. E. Pratt to Amos Spicer dated February 21, 1936, and recorded by the complainant, Billy Hayes Hall, on June 11, 1960, more than two and one-half years after the date of Spicer's deed to Billy Hayes Hall, was a forgery and was part of a fraudulent scheme by Hall without consideration to defeat Lane's title to the property.

The defendant Lane assumed the position of a cross-complainant and prayed the court to remove both the deed from Pratt to Spicer and from Spicer to Hall as clouds upon his title. The answer and cross bill were filed May 13, 1961. The original solicitor for Billy Hayes Hall, Hon. William Black of Tiptonville, Tennessee, withdrew from the case.

On April 19, 1962, Hon. John W. Hart and Hon. J. Howell Glover, as new solicitors for complainant Hall, filed an answer denying that the grantors of Preston Lane, namely John Peters and Sarah Peters Lance, were in fact nephew and niece of W. E. Pratt and denying that they were remaindermen under the will of W. E. Pratt. Further, complainant-cross defendant Hall averred that W. E. Pratt, at the time of his death, owned only a life estate in the property and that therefore John Peters and Sarah Peters Lance, even if they were in fact remaindermen under the will of W. E. Pratt, had no legal title and could convey none to the defendant, Preston Lane. The answer to the cross bill further averred that upon the death of W. E. Pratt legal posses-

sion of the land described in the will devolved upon Amos Spicer who conveyed the same to the complainant, Billy Hayes Hall.

The appellant has filed twenty-three assignments of error most of which relate to the admissibility of evidence. The principal assignment is No. II, "The Court erred in holding that the bill should be dismissed because of failure of complainant to prove title such as is required to sustain an action of ejectment." An elaboration of the bizarre facts is now in order.

By deed dated November 20, 1919, duly recorded in the Register's office of Obion County, Tennessee, W. J. Nichols and wife conveyed to W. E. Pratt and wife the 45 acres of land involved in this litigation. W. E. Pratt's wife predeceased him. W. E. Pratt lived on this property up until his death in 1937. On July 20, 1936, W. E. Pratt gave a deed of trust on the 45 acres to secure an indebtedness of $223 owing by him to the Bank of Hornbeak, Tennessee. The description in said deed of trust is as follows:

"Beginning at a stake with sycamore and cypress pointers on the bank of Reelfoot Lake at a point known as Booths Fishery and running thence south 55 degrees east, — poles to a stake, thence north 22½ east 60 poles to a stake, thence north 55 degrees west to a stake in the branch with four honey locust pointers, thence down said branch with its meanderings to a point 16 poles to the Lake — poles to the Bank of the Lake to a cypress marked for a corner with cypress pointers, thence down the Lake to the beginning, and containing 45 acres, more or less, and being the land set apart to Mary J. Brandon, out of her father's

estate, and the title to the same was vested in W. J. Nichols by Decree of Chancery in April 1912 and deeded to W. E. Pratt and wife by W. J. Nichols, with deed recorded in Book R., No. 9, page 256 in Register's Office in Obion County, Tenn.''

W. E. Pratt was a man of limited means and made a modest living as a commercial fisherman and hunter on Reelfoot Lake. He died on March 16, 1937, leaving a holographic will dated March 10, 1936, which was admitted to probate in the County Court of Obion County of date March 19, 1937, and recorded in Will Book D, page 321. Said will is in the words and figures as follows:

''I W. E. Pratt of the County of Obion, State of Tennessee, Located in District 12, Route 1, Hornbeak, being of sound mind and memory first, I give and bequeath to Mrs. Helen Leasure Winters the girl I raised the Home place for her life time. At her death it is to go to my late sister's children or to their descendants share and share alike also to Helen Leasure Winters I leave my household and kitchen, notes, cash and all other property in fee simple to dispose of as she sees fit to do after paying my Funeral Expenses and debts. This is my last will and testament, also I hereby make her Executrix without bond.

/s/ W. E. Pratt, Rt. 1
Hornbeak, Tennessee, U.S.A.

This March 10, 1936.''

The life beneficiary, Mrs. Helen Leasure Winters, took possession of the 45 acres of land under the will of W. E. Pratt in 1937 and kept possession until her death in 1957. Sometime prior to 1957 Mrs. Helen Leasure

Winters, the life tenant, notified the Tax Assessor of Obion County to assess the annual county taxes on the 45 acres of land to Ellis Kirby who had been the farm tenant of Mrs. Winters for several years. Mrs. Winters told the Tax Assessor that she intended to sell the property to Kirby. Accordingly, the Tax Assessor did assess the property in the name of Kirby. Mrs. Winters left Obion County before the death of W. E. Pratt and remained a non-resident of Tennessee until her death. Apparently she never made any attempt to execute a deed to Kirby to the property.

After the news came to the area around Reelfoot Lake and Samburg that Mrs. Winters had died, parties interested in the land began trying to locate the nieces and nephews of W. E. Pratt named as remaindermen in his will with the purpose of buying the land. Of the 45 acres owned by Pratt some fifteen acres lie west of the Union City-Samburg Highway and adjoin Reelfoot Lake. These fifteen acres are comparatively level, worth approximately $400 per acre for farming purposes and an additional, but unknown, value because of their proximity to Reelfoot Lake. The remainder of the land lying east of the road is rough, unsuitable for farming and worth from $40 to $50 per acre.

The defendant, Preston Lane, who is employed by the U. S. Wildlife Service was for ten years stationed at Reelfoot Lake. Being interested in the property he made an exhaustive search in several states for persons named Peters who might be the nieces and nephews of W. E. Pratt. Finally, in December, 1957, Hon. Frank D. Berry an attorney in Madisonville, Kentucky, located a man named John Peters, a coal miner in Madisonville, Kentucky, who claimed to be the nephew of W. E. Pratt and

who told Mr. Berry that his sister, Mrs. Sarah Peters Lance, and he were the only two children of Amanda Peters who had been dead for several years and that the said Amanda Peters was the only sister of W. E. Pratt. Mr. Berry, who holds an academic degree from Vanderbilt University and a law degree from Harvard University and who for several years was employed as a title attorney for the Federal Land Bank of Louisville, Kentucky, was satisfied that Mr. Peters and his sister were in fact the niece and nephew of W. E. Pratt. Attorney John D. Hardin of Hopkinsville, Kentucky, had referred Mr. Lane to Mr. Berry.

Mr. Berry notified defendant Lane about John Peters and Mr. Lane went to Madisonville, Kentucky, and interviewed Mr. Peters. John Peters convinced the defendant Lane that he and his sister, Mrs. Lance, were the only two children of Amanda Peters, a deceased sister of W. E. Pratt and that she had died about 1934. Mr. Lane testified that Peters told him that his uncle, W. E. Pratt, had sent money to his sister, Amanda, from time to time to help her with her living expenses and that after the death of his mother, he, John Peters, called a rural mail carrier in Obion County to notify his uncle of the death of Amanda Peters and not to send any more money.

Peters informed Lane that his sister was living at Evansville, Indiana; that she and her husband were moving to Florida and would be through Madisonville, Kentucky, after Christmas. On or about January 5, 1958, Attorney Berry called Mr. Lane to come to Madisonville, Kentucky, that Mrs. Lance was there or would be there in a day or two. Accordingly, the defendant Lane went to Madisonville; negotiated with John Peters and Mrs. Lance for the purchase of the Pratt property and ob-

tained a deed signed and acknowledged in Madisonville dated January 7, 1958. Mr. Lane had had the deed prepared in Union City, Tennessee, and took it with him to Madisonville, Kentucky. Attorney Berry represented Mr. Lane and a lawyer named W. R. Tapp represented John Peters and Mrs. Lance. The deed was acknowledged before C. R. McCarthy, a furniture dealer and Notary Public in Madisonville, Kentucky. Mr. Lane testified that the $4,500 consideration shown in the deed was the true consideration; that he borrowed $500, drew part of his savings out of the bank and the remainder he had in cash in a lock box in the Bank of Hornbeak. He also testified that from John Peters' dress, he seemed to be rather poor but his sister, Mrs. Lance, seemed to be in better circumstances because she was dressed better and had a fairly new car and house trailer.

Both Mr. Berry and Mr. Tapp testified by deposition. Mr. Tapp testified that he had had a stroke sometime about 1960 and his recollection of events prior to 1960 was very much impaired; that he had only a faint recollection of taking four people in a car bearing an out-of-state license by Charlie McCarthy's to acknowledge a deed and that he did not accompany the people back to Mr. Berry's office because he had a dinner engagement. Mr. Lane brought the deed back to Obion County where he presented it to the Register of Obion County for recording on January 8, 1958. He was informed by an employee in the Register's office that there had been presented for registration on December 21, 1957, a deed from Amos Spicer conveying the 45 acre Pratt land to complainant Billy Hayes Hall.

The defendant Lane, within a few days after learning that complainant Hall had a deed to the 45 acres offered

to reimburse him the money which he had expended but Hall refused. Defendant Lane went to Mr. Harry Hudson, the Tax Assessor of Obion County, and requested the 45 acres be assessed in his name on the authority of the deed which he had from John Peters and Sarah Peters Lance. The Tax Assessor refused to do so saying to Lane that he did not believe either the deed which Billy Hayes Hall had or the deed which defendant Lane had was a valid deed; that he did not believe Lane had paid $4,500 for the land and he was not going to change the assessment. For the year 1958 and all subsequent years the taxes remained assessed in the name of Ellis Kirby but the taxes were actually paid by the complainant, Billy Hayes Hall.

The complainant Hall testified in his proof in chief that on April 3, 1958, he made arrangements with one Robert Earl Parker to start cultivation of the 15-acre farm land located west of the Union City-Samburg Highway under his deed from Amos Spicer; that Parker, on the morning of April 3, 1958, started breaking the ground and the defendant Lane came up and protested; that Hall and Lane got in a fight and Mr. Lane drove off; that complainant Hall then got a warrant against Mr. Lane but the grand jury refused to indict; there was a rainy season and when Hall went back to start farming again the defendant, Charlie Archie, and Lane were already farming the land. Upon the advice of Jim Hutchcraft, Billy Hayes Hall's father-in-law, he decided to proceed by law rather than try to take possession of the property by force.

With reference to the possession of the property, Mr. Lane testified that he immediately, after receiving his deed, hired a bulldozer to straighten out a creek, push

some trees out and to clear approximately 1½ acres of the land; that he burned the dead Johnson grass on the land and hired Mr. Kirby, the former tenant, to plow some of the ground. Further, he testified that by agreement with Jamie Hamilton, an adjacent property owner on the north, they pushed out a fence row and sold the trees to a man named Davis who hauled the timber to Hughey Bros. at Tiptonville, Tennessee. Further, he said that all these acts occurred prior to the date of the fight on April 3, 1958, related by the complainant, Billy Hayes Hall. Defendant Lane testified that in the fight he came out second best, got his shoulder and arm hurt and went to Campbell's Clinic in Memphis, Tennessee, where he was confined for eight days. Upon his return from the hospital he contracted to rent the farm to the defendant Charles Archie and Archie has been farming the land continuously under the rental contract to the date of the trial. The complainant, Billy Hayes Hall, offered no proof to contradict or rebut the testimony of Mr. Lane relative to the bulldozing, selling of timber, etc.

Defendant Lane and defendant Archie were in the possession of the land on June 11, 1960, when the deed from W. E. Pratt to Amos Spicer dated February 21, 1936, conveying the land in controversy was presented by the complainant, Billy Hayes Hall, for recording in the Register's office of Obion County, Tennessee. This deed is as follows:

"W. E. Pratt

To: Deed, Land, Dist. # 12

Amos Spicer

KNOW ALL MEN BY THESE PRESENTS; That for and in consideration of the sum of Ten Dollars

($10.00), cash in hand paid, the receipt of which is hereby acknowledged, I, W. E. Pratt, have this day bargained and sold and by these presents, bargain, sell, transfer, and convey unto Amos Spicer subject to life estate retained by me, the following described premises lying and being in the twelfth Civil District of Obion County, Tennessee.

All of that portion of the following described tract of land which lies between the old County Road and Reelfoot Lake, it being my intentions to retain and not include in this sale that portion of the property which lies East of the Old Samburg-Union City Road but selling and including in this conveyance all of that property lying west of said road.

BEGINNING at a stake with sycamore and cypress pointers on the bank of Reelfoot Lake at a point known as the Booths old fishery, thence south 55 degrees east ——— poles to a stake thence north 22½ ——— east 60 poles to a stake; thence north 55 degrees west ——— poles to a stake in branch with 4 honey locust pointers; thence down said branch with its meanders to a point 16 poles from the Lake; thence 16 poles to the bank of the lake to a cypress marked for corner with cypress pointers; thence down the lake to the beginning, containing about 45 acres, more or less, off the lands set apart to the Mary J. Bramham, out of her fathers estate. This property is bounded on the north by Taylor; on the east by Dickey; south by Killion; and on the west by Reefoot Lake. This is the same property as was conveyed to W. E. Pratt and wife, R. L. Pratt by W. J. Nichols et ux by deed dated November 20, 1919, as shown of record in Deed Book 8-R, page 256,

records of the Register's Office of Obion County, Tennessee.

The property not included in this conveyance is that which lies east of the Samburg-Union City Road and commonly known as the Pratt homeplace.

TO HAVE AND TO HOLD the above described property unto the said Amos Spicer his heirs and assigns in fee simple forever, subject to the life estate which I have retained herein.

I covenant that I am lawfully seized and possessed of said property, that I have a good and perfect right to convey the same and that the same is unencumbered.

I further covenant and bind myself, my heirs and personal representatives that I will forever warrant and defend the title to said property unto the said Amos Spicer, subject to my life estate, against the legal and lawful claims and demands of any and all persons whomsoever.

Witness my hand this 21st day of February, 1936.

W. E. Pratt
———————
W. E. Pratt

STATE OF TENNESSEE
COUNTY OF LAKE

Personally appeared before me, the undersigned Notary Public in and for the Lake County, Tennessee, W. E. Pratt a single man with whom I am personally acquainted and acknowledged, the execution of the foregoing intentions for the purpose therein contained and expressed.

Witness my hand and Notarial Seal at office in Tiptonville, Lake County, Tennessee, this 21st day of February, 1936.

Lillian Newton
_____
Notary Public

My Commission expires:
October 12, 1938.''

On April 4, 1961, some nine months later, the complainant, Billy Hayes Hall, filed his original bill in this cause.

The defendant Lane, in support of his deed from John Peters and Sarah Peters Lance, offered in evidence and relied upon the following affidavits recorded in the Register's office of Obion County under the authority of T.C.A. Section 30-1201:

(1) Affidavit of Descent by John Peters dated December 7, 1958, and filed for record in the Register's office of Obion County, Tennessee, January 8, 1958.

(2) Affidavit of Heirship by John Peters dated February 13, 1958, recorded in the Register's office of Obion County, Tennessee, February 19, 1958.

(3) Affidavit of Heirship by William Butler dated February 24, 1958, recorded in the Register's office of Obion County, Tennessee, February 26, 1958.

All three of these affidavits were executed in Madisonville, Kentucky.

The Affidavit of Descent was prepared by Attorney Berry of Madisonville in accordance with the practices prevailing in Kentucky with reference to establishing title by inheritance. Since it was recorded in the Register's office of Obion County on January 8, 1958, it could

not have been executed on December 7, 1958, so it must have been executed on December 7, 1957.

The other two Affidavits of Heirship were prepared by a Union City lawyer for the benefit of Mr. Preston Lane. By an amended and supplemental bill the complainant Hall challenged the verity of the affidavits as provided by T.C.A. Section 30-1205 and prayed that they be expunged from the records of the county because they were not true. The Chancellor found that the need from W. E. Pratt to Amos Spicer was not a bonafide transaction and in effect a forgery and dismissed the complainant's original bill. He also held that the evidence in behalf of the defendant was not sufficient to carry the burden of proof to sustain the verity of the affidavits of heirship as provided by T.C.A. Section 30-1205. The court therefore disregarded the contents of the affidavits in reaching a decision.

The depositions of the grantors in the deed to Preston Lane were not taken because the defendant Lane testified that he was unable to locate John Peters and his sister, Mrs. Sarah Peters Lance, in order to obtain their evidence. In dismissing the relief prayed for under the cross bill of Lane the Chancellor made the following statement: "The result of a careful examination of all the evidence offered by the defendants and the authorities cited is not sufficient for the court to reach a conclusion that the heirship of Manda Pratt as a sister of W. E. Pratt was clearly and conclusively proven. The result is the relief prayed for under the cross bill is likewise denied and the cross bill dismissed."

The defendants filed a petition to rehear which the Chancellor overruled and no appeal was taken from the action of the Chancellor by the defendants.

We have reviewed the evidence in this case very carefully and concur in the finding of the Chancellor that the deed from Pratt to Amos Spicer was in fact a forgery. Jim Hutchcraft, father-in-law of complainant Billy Hayes Hall, operates a restaurant and boat dock at Reelfoot Lake. He was a witness for complainant. The witness, Amos Spicer, is a part-time fisherman with no regular job, no home, and proven to be almost, if not, an alcoholic. In recent years he has lived in a one-room shack owned by Hutchcraft near the Hutchcraft boat dock rent free.

At the time of the trial in 1966 he was 58 years of age and testified that he had been to the fourth grade; had lived around Reelfoot Lake all his life. He knew Mr. Pratt in his lifetime and when he, Spicer, was a young man going to school he would stop by Mr. Pratt's home and bring in wood and do odd jobs for him.

Spicer's account of the actual delivery of the deed to him by Pratt is as follows:

"Q Will you tell the Court what occurred between you and Mr. Pratt at the time he gave you the deed?

A Well, he had been telling me all the way along when I was carrying wood and water in for him that I wasn't doing it for nothing and he gave me the deed and said 'you give me some money' and I said 'I got a dollar.' I didn't know what he meant. I gave him the dollar and he gave me the deed. I just put it in my pocket and carried it home and put it in my trunk.

Q You say you took it down to your house and put it in your trunk?

A Yes.

Q Did you take it and have it recorded?

A No, I didn't. I didn't know what to do with it.

Q Why didn't you?

A I just didn't know. I couldn't read it. I hadn't showed it to no one.

Q Did you pay anything besides the dollar for this property?

A No.

Q And what was it he said when he gave it to you?

A He said I am going to give you something. Give me a piece of money and I just gave him a dollar. I didn't know what it was.

Q What happened to that deed after you put it in the trunk?

A I just forgot where I put it and I didn't think no more about it. I didn't think anymore about it and the girl that he had up there—I told the girl that I had a deed to the place up there after somebody told me what I had. She said 'you keep away from that place until you can show any deed better than that.'

Q Did you do that?

A I put it away. I didn't want to get into trouble—

Q Did you later discover where you put the deed?

A I had forgot where it was and I didn't see it again until I talked—until I was talking one day and I found out. I showed it to this man and said I want you to look at this and read it to me. He asked me

why I didn't record it. I told him I was ordered to stay away from the place. I didn't know what to do with it.

Q Mr. Spicer, did Mr. Pratt, sometime after giving you this paper, die? Is W. E. Pratt now living or dead?

A Dead.

Q About how long after giving you this paper was it that he died?

A A year or two—two years, something like that.

\* \* \* \* \* \*

Q What was said between you and him about the deed after he gave it to you?

A He said when he died the place was mine.

Q You told me you didn't know what was in the deed?

A I didn't at the time he handed it to me.

Q What did you do then with the paper?

A I took it home and put it up.

Q Was your wife home when you got there that day?

A I don't know. I can't say. I don't know.

Q Anyway, you took the paper writing, whatever it was without reading it—

A I tried to read it the best I could.

Q Did you know what it was?

A I thought I did.

Q You just took it home without talking to anybody and put it in your trunk, is that right?

A Yes.

Q Where was the trunk?

A In the house.

     \*   \*   \*   \*   \*   \*

Q When did you next see that paper?

A Well—

Q After you put it in the trunk, did you see it any more?

A Why, no, a lot of stuff got over it and I moved the trunk when we moved and I finally found it. I was looking in the trunk and I found it.

Q When?

A I found it about—I don't know.

Q Have you any idea?

A About 2½ or 3 years.

Q About 2½ or 3 years?

A Yes, maybe longer than that.

Q From the time you put it in the trunk, you never saw the paper any more until about 2½ or 3 years ago?

A That's right.

Q Had you looked for it?

A No, I forgot all about it.

Q How many acres of this land was it?

A I don't know.

Q The deed says 45 acres, is that about right?

A I don't know.

Q Well—

A I wasn't no farmer. It was just a tract of land over there.

Q Was anybody present when you found the deed?

A Well, not when I found it.

Q Were you looking for it when you found it?

A No.

Q It just happened that you ran across it, is that right?

A Yes.

Q What were you looking for at the time you found it?

A Some more papers that I had in the trunk.

Q What papers?

A Just papers.

Q What kind?

A Fish tickets and stuff."

Later Spicer testified that Bill Fraley and Dee Shaw, both of whom were dead at the time of the trial, knew that Pratt had given him a deed to the land because he showed them the deed on the way home from Pratt's. At the time he found the deed in his trunk he was living in the little one-room house next door to Hutchcraft's place. Later in his testimony on cross-examination he testified that he did tell Helen when she was living in Samburg that he had a deed to the place. At that time Mr. Pratt was dead and Helen was working in Samburg as a maid cleaning cabins. That is when she told him to stay away

from the farm or she would have his arrested. Later he said when he found the deed, he took it to Billy Hall who read the deed and asked him, Spicer, why he didn't do something about it. Spicer said he replied that he didn't have any money and Billy Hall volunteered to help him by saying, "I will get the lawyer and I will give you a thousand and take care of you the rest of your life."

We pause to observe that at the time this incident is supposed to have happened, Spicer had already executed a deed to the 45 acres of land to Billy Hayes Hall which deed made no reference whatsoever to a lost deed from Pratt to Spicer.

Billy Hayes Hall's testimony about this conversation with Spicer is that it occurred at the time he took the deed from Spicer to Hall; that Spicer had told him he owned part of the land but he didn't know how much and didn't know what his deed was, that it was lost; that he, Hall, checked the records in Union City and could find no reference to any deed to Spicer, but went over to Tiptonville and had a lawyer to draw up a deed from Spicer conveying the property using the same description in the original deed from Nichols to Pratt. About the conversation he answered, "Yes, I told Amos if I can help you, I will. I said I would like to buy that land. He said all right. I told him I would give him $1,000, if I win or if I get possession and take care of you the rest of your life because of the poor health he was in. He said that's all right."

Spicer testified that Billy Hall gave him a note for $1,000 as consideration for his deed but when asked to surrender it or to file it in evidence, he refused to do so on advice of counsel.

Only a certified copy of the deed from Pratt to Spicer was introduced in evidence. Hall testified that after he had recorded the deed it was stolen from his home along with some other papers several months after it was recorded and before the trial. He was corroborated to the extent that a former sheriff of Obion County testified that complaint had been made to him by complainant Hall that his home had been broken into and some property stolen including a deed. The notary public who was supposed to have acknowledged the signature of Pratt to the deed was dead and no attempt was made to prove the name of the lawyer who allegedly drew the deed for Pratt.

Mr. Harry Hudson, the Tax Assessor for Obion County, testified as a witness for complainant Hall that he remembered when the deed from Pratt to Spicer was presented to him by Billy Hall; that it seemed to be one hundred years old, on old paper. However, on cross-examination he negatived his whole testimony by saying that he was not sure, but that he remembered it was an old deed and made to Billy Hayes Hall and seemed like Spicer was connected with it. Finally, he said it might have been from anybody to Spicer or it might have been notarized by Spicer.

Jim Hutchcraft, father-in-law of Billy Hayes Hall, testified as a witness for the complainant that he had known Bill Pratt all his life and was a good friend of his and that Amos Spicer and Bill Pratt were big cronies; that he remembered on one occasion he, Hutchcraft, had driven Bill Pratt to Tiptonville and as they were coming back Bill pointed over to the property in question and said, ''I am giving Amos a deed to that property when

I die," pointing to the 15 acres west of the Union City-Samburg road and adjoining Reelfoot Lake.

It is very significant to note that the deed from Spicer to Hall conveyed 45 acres of land and made no reference to any exclusion of the property east of the old Samburg-Union City road whereas the deed allegedly executed by Pratt back in 1936 excludes from the conveyance all that portion laying east of the old Samburg-Union City road and purports to convey only that portion lying between the old road and Reelfoot Lake, about 15 acres. There is some proof in the record that in 1936 there was only one Samburg-Union City road and it was not referred to as the old Samburg-Union City road because the new highway was built after 1936 but the old Union City-Samburg road was still in existence at the time of the trial.

Finally, we quote from the testimony of complainant Hall about the finding of the deed from Pratt to Spicer:

"Q When was it that you first saw the deed that Mr. Pratt made to Spicer?

A It's been approximately two years or maybe a little over.

Q With reference to this time you had him to deed the property, had you seen the deed at that time?

A No. The fact of the business is I had my doubts as to whether there was or not. I figured he was telling me the truth. I took it to be the truth.

Q You had made the deed to the farm on his statement?

A Yes. As far as I was concerned it was a verbal agreement.

Q How long was it after you got this deed before you got the old deed?

A That happened in December, 1957 and it was in 1960 that the deed was found? Approximately 2 or 3 years.

Q What happened about finding the deed?

A When he brought the deed, I gave a sigh of relief. Up until that time, I didn't have a chain of title and I knew there was nothing I could do. I knew when he came up, that I had legal grounds to take possession.

Q Well, where were you when you first saw the deed?

A Upon the dock. I stay over there a pretty good time.

Q He brought you the deed?

A Yes.

Q And he gave it to you, is that right?

A Yes."

We concur with the finding of the Chancellor that the testimony of the complainant is not believable. Amos Spicer had no property. If he had received a written document from Mr. Pratt, he would never have put it in the trunk without knowing what was in the written document and upon the death of William E. Pratt he would never have permitted the life tenant, Helen Winters, to take possession of the property and keep it over twenty years and to deny him the permission to even go upon the land. We, too, think the deed from Pratt to Spicer was a forgery.

■ The law is clear in Tennessee that in order to recover in ejectment the complainant must rely upon the strength of his own title and not on the weakness of his adversary's. Demarcus v. Campbell (1933), 17 Tenn.App. 56, 65 S.W.2d 876; Atkinson v. Atkinson (1939), 23 Tenn. 269, 130 S.W.2d 157; Bertha v. Smith (1943), 26 Tenn. App. 619, 175 S.W.2d 41; Melton v. Anderson, 32 Tenn. App. 335, 222 S.W.2d 666; Preston v. Bush, 56 Tenn.App. 510, 408 S.W.2d 675.

The appellant contends that if he is not entitled to recover land under the theory of ejectment he is at least entitled to recover possession of the property as a forcible and unlawful detainer suit under the provisions of T.C.A. Sections 23-1602 and 23-1603. Gibson's Suits in Chancery, 4th Edition, Section 1045.

■ Considering the suit only as a detainer bill, we are not persuaded that the complainant was entitled to a decree for possession of the property. By the complainant's own testimony he was never in actual possession of the property except for a few hours on the morning of April 3, 1958, when his employee had started a tractor plow on the 15 acres of land in dispute. The preponderance of the evidence is that the defendant Lane had already taken possession of the property prior thereto by doing bulldozer work, burning Johnson grass, cutting some timber and exercising all indicia of ownership. Therefore, we hold that the complainant Hall never had such possession of the property as to entitle him to prevail in an action of forcible entry and unlawful detainer. His Honor the Chancellor was correct in dismissing the complainant's original bill. Assignment of error No. II is overruled.

■ We hold that the testimony of the defendant Lane that Amos Spicer told him he obtained his deed from Helen Winters was admissible for the purpose of impeaching the testimony of Spicer as a witness. Assignment of error No. III is overruled.

■ We hold that the Chancellor correctly admitted in evidence a copy of the deed of trust executed by Pratt to secure the indebtedness to the Bank of Hornbeak shortly after he allegedly had given a deed to the property to Amos Spicer. Assignment of error No. IV is overruled.

■ The Chancellor correctly admitted in evidence and considered the will of W. E. Pratt as bearing on the validity of the alleged deed from Pratt to Spicer. Assignment of error No. V is overruled.

■■ Assignment of error No. VI that the court erred in admitting the testimony of defendant Archie that "a fellow" had told him that Billy Hayes Hall and Wilson Hall had offered him money is sustained as hearsay but the error of the Chancellor is harmless because this court has not considered such testimony in reaching our decision. T.C.A. Section 27-117. We try the case de novo with a presumption of correctness of the decree below. T.C.A. Section 27-303.

■ Assignment of error No. VII complaining that the court erred in admitting the testimony of the witness Lane to the effect that complainant's father, Dallas Hall, telephoned him and said, in substance, "We've got to have at least half of the farm," or "You didn't pay half what it's worth," and that he, Dallas Hall, would become sheriff and put Lane in jail, etc. is overruled. We think the evidence was competent. At most it would be harm-

66

less error because we have not considered such testimony in arriving at our decision.

■ Assignment of error No. VIII that the court erred in admitting the testimony of defendant Lane that A. B. Shelton showed him a letter from an Attorney Smith saying that the property belonged to the state is sustained but it, too, is harmless error because this court has not considered such testimony in reaching our decision.

■ Assignment of error No. IX that the court erred in excluding the testimony of Jim Hutchcraft that Pratt told him he was going to give Amos a deed to the property when he died, pointing to the property, is sustained along with assignments of error Nos. X and XI, XII and XIII. This court has considered the testimony of Mr. Hutchcraft in its entirety in arriving at our decision in this case.

Assignment of error No. XIV that the court erred in excluding as hearsay certain answers by the witness Hall is sustained. This court has considered the testimony of Hall in its entirety in reaching our decision.

■ Assignment of error No. XV that the court erred in admitting the testimony of the witness Lane as to the heirs of W. E. Pratt is overruled for the reason that same was not prejudicial to the complainant. The Chancellor ruled adversely to the defendant Lane's claim of title. For the same reason assignment of error No. XVI is overruled.

■ Assignment of error No. XVII complains that His Honor the Chancellor erred in admitting the testimony of attorney Berry of Madisonville that John Peters and Sarah Lance were brother and sister. This was harmless error because the Chancellor ruled adversely to the

defendant Lane on the issue of the relationship of John Peters and Sarah Lance to the testator, W. E. Pratt.

Assignments of error Nos. XVIII, XIX and XX insist that the Chancellor erred in admitting in evidence the Affidavit of Descent and Affidavits of Heirship mentioned above. The complainant was successful in his suit challenging the verity of these affidavits. We do not know any way the Chancellor could have considered the complainant's challenge of the affidavits without admitting them in evidence and placing the burden of proof upon the defendant to prove the facts set out in such affidavits. These assignments of error are overruled.

Assignments of error No. XXI and XXII assail the action of the Chancellor in sustaining exceptions to testimony of the complainant Hall as to his investigation concerning the children of Amanda Pratt and particularly his testimony that he was unable to obtain any information about Amanda Pratt Peters or John Peters or Sarah Peters Lance. These matters related solely to the defendant's claim of title to the property involved. There was no legal prejudice to the complainant if the Chancellor was in error in excluding such evidence. The assignments are overruled.

Assignment of error No. XXIII complains of the action of the Chancellor in excluding the testimony of Harry Hudson, Tax Assessor, that the defendant Lane tried to get him to change the assessment from Kirby to Lane and that Hudson refused to do so saying that he was acting on advice from Nashville and that Lane had not satisfactorily proven to him that he had paid for the property. We think His Honor the Chancellor was in error and this evidence was admissible. The assignment of error is sustained but it is harmless error because

this court has considered the testimony of Mr. Hudson in its entirety in arriving at its decision in this cause.

The decree of the Chancellor will be affirmed and the costs of this appeal taxed against the appellant, Billy Hayes Hall, and his sureties.

When this case came on to be argued Judge Avery was unable to be present because of illness and by consent of all the parties Mr. Jack Manhein. Sr. of the Jackson-Madison County, Tennessee, Bar sat as Special Judge.

Bejach, J., and Manhein, Special Judge, concur.