TENNESSEE & PACIFIC RAILROAD COMPANY *v.* MABRY
and others.

(*Knoxville.* September 25th, 1886.)

1. STATUTE OF LIMITATIONS. *Act of* 1819. *Begins to run, when. Successive judicial sales.*

If land, subject to the liens of two judgments, and levied on under both, is sold, while both liens subsist, first, under the junior judgment, and afterward, under the senior judgment; and is taken possession of, by the first purchaser, before the second sale; the statute of limitations of seven years begins to run, in favor of the first purchaser, and against the title, subsequently accruing to the second purchaser, from the date at which possession is assumed by the former, and not from date of second sale.

Code cited: §§ 2763–4 (T. & S.), §§ 3459–60 (M. & V.)

Case cited and approved: Porter *v.* Cooke, Peck, 30–47.

2. SAME. *Same. Title vested by possession.*

In such case, seven years continuous adverse possession, by the first purchaser, and his vendee, under an assurance of title, purporting to convey an estate in fee, invests the vendee, with an indefeasible title in fee-simple, and bars the claim of the second purchaser; although, seven years may not have elapsed, from the date of the second purchase.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County. June Term, 1885. W. B. STALEY, Ch.

J. T. & J. K. SHIELDS, JAS. COMFORT, and L. TILLMAN, for complainants.

WASHBURN & TEMPLETON, and LUCKY & YOE, for respondents.

CALDWELL, J.   The record in this case is voluminous, and the many questions raised in the pleadings have been presented with great force by counsel in argument.

But believing, as we do, that there is one single question which is necessarily controlling, it is deemed important to state in the opinion of the Court only such pleadings and facts as raise and elucidate that question.

At the September Term, 1871, of the Supreme Court, at Knoxville, several judgments and decrees were, by that court, pronounced against George W. Mabry; and in March following they were transferred by proper parties to George Maney, as President of the Tennessee & Pacific Railroad Company, and to one Mrs. Crutcher, at his instance.

In July, 1872, executions were issued from the judgments and decrees, and were levied upon "981" acres of land, situated in Knox County (the county in which the recoveries had been had), and belonging to the debtor, George W. Mabry.

The sales were prevented by injunction, which remained in force until November, 1875. After the dissolution of the injunction *alias* executions were issued and levied upon the same land, in March, 1876; and, on the 27th day of April, 1876, the land was sold, and purchased by George Maney, as President of the Tennessee & Pacific Railroad Company.

He took a Sheriff's deed August 16th, 1876, to himself as President, etc.

Soon thereafter there was an agreement between proper parties that the claim of George Maney, President, etc., to the land, should be transferred to the counties of Davidson and Wilson, and other stockholders in the Tennessee & Pacific Railroad Company.

Thus far there seems to be but little difficulty in defining the rights of George Maney, and those claiming through him. But while the several things enumerated were transpiring other proceedings were had against the land, and other claims to it arose.

In 1872 Thomas and Mast obtained a judgment in the United States Circuit Court, at Knoxville, against George W. Mabry, for a large sum, and within twelve months thereafter they caused the same land to be sold, and became the purchasers of it, under an. execution from their judgment. In this instance the amount of the land was estimated at 700 acres, though the description otherwise was the same as in the other case.

Thomas and Mast transferred this bid to W. A. Lenoir, and he received a deed from the United States Marshal, April 13th, 1875. Lenoir went into the adverse possession of the land at once, and so held it until June, 1882, when he conveyed it to Jonnetta L. Mabry, wife of George W. Mabry.

From the date of her deed until the commencement of this suit she enjoyed the uninterrupted adverse possession of the land.

On the 24th day of April, 1883, the Tennessee & Pacific Railroad Company and the counties of Davidson and Wilson, for themselves and other stockholders, filed the original bill in this cause against George W. Mabry and his wife and others, to recover the possession of said land, to remove the claim of Mrs. Mabry as a cloud upon the title of complainants, to recover rents from Lenoir, etc., etc.

Mabry, his wife, and Lenoir, answered separately, interposing several grounds of defense, among them the statute of limitations of seven years.

From the dates already given it is seen that this action was commenced six years, eleven months, and twenty-seven days after the purchase of the land by George Maney, President, etc., and eight years and eleven days after the deed to Lenoir and the inception of his possession.

It follows that if the operation of the statute is to be reckoned from the date of Maney's purchase, the bar is not complete; and that, if it is to be computed from the date of the deed to Lenoir, the bar is complete, and complainants cannot recover.

The contention of counsel for complainants is that no right of action accrued to Maney until he purchased the land, and that, therefore, the statute could not begin to run against him before that time; while, on the other hand, it is insisted, in behalf of defendants, that it began to run when Lenoir took possession.

The language of the statute is:

"Any person having had, by himself or those through whom he claims, seven years adverse possession of any lands, 　＊　＊　＊　granted by this State, 　＊　＊　＊　holding by conveyance 　＊　＊　＊　or other assurance of title, purporting to convey an estate in fee, without any claim by action at law or in equity, commenced within that time, and effectually prosecuted against him, is vested with a good and indefeasible title in fee" 　＊　＊　＊　Code, § 2763.

"And, on the other hand, any person, and those claiming under him, neglecting for said term of seven years to avail themselves of the benefit of any title, legal or equitable, by action at law, or in equity, effectually prosecuted against the person in possession, as in the foregoing section, are forever barred." Code, § 2764.

These sections of the Code, or either of them, taken together or separately, warrant the contention that the operation of the statute should be computed from the commencement of Lenoir's possession, and not from the date of Maney's purchase.

The former declares that the person holding adverse possession, under assurance of title, for the period of seven years, thereby acquires a good title, without reference to the character of his title in the first instance; the latter declares that the real owner of the title, by failure to assert his right, by suit, within seven years from the

commencement of the adverse possession, is forever barred.

Or, to apply the provisions more directly to the facts and parties of this case, § 2763 declares that Mrs. Mabry, by her own adverse possession, and that of Lenoir, through whom she claims, for more than seven years, holding under their deeds, has acquired a good and indefeasible title; and § 2764 declares that whatever title may have been in complainants, and in Maney and Mabry, under whom they claim, is now forever barred by their failure to sue within said period of seven years.

It is true, strictly speaking, that no right of action accrued to *Maney* for the possession of the land, and the statute did not begin to run against *him* until he purchased the land; but it did accrue to *Mabry*, under whom he claimed, and the statute did begin to run against *Mabry* the moment Lenoir took possession.

The statute began to run *against the title* complainants now assert, and *in favor of* that claimed by Mrs. Mabry, at the very inception of Lenoir's adverse possession.

As the possession of Mrs. Mabry may be coupled with that of Lenoir, through whom she claims, to perfect her title; so, likewise, the time during which Mabry failed to sue may be added to the time during which these complainants, who claim under him, failed to sue, to complete the bar.

That the land was incumbered by the judgment lien of Maney at the time of Lenoir's purchase; that

Lenoir took exactly the title that Mabry had; that the title of Maney, when first acquired, was superior to that of Lenoir, can make no sort of difference.

The most defective title may override the most perfect title, and become good and indefeasible itself, by process of time and adverse possession.

The case of *Porter's Lessee* v. *Cocke*, Peck, 30–47, is upon principle, in some of its aspects, identical with the case at bar.

There, as here, there were two judgment liens, two levies, and two sales of the same land; there, as here, the first sale was made under the junior judgment and levy, and the purchaser at the first sale went into the adverse possession of the land before the sale under the senior judgment and levy; there, as here, the purchaser at the second sale brought his action against the purchaser at the first sale, the suit being brought within seven years after the second sale, but more than seven years after the first sale and the taking of possession thereunder.

The defense was statute of limitations, which the plaintiff attempted to meet upon the ground that his right of action for the possession of the land did not accrue until his purchase, which was less than seven years before he commenced his suit, and that, therefore, the bar of the statute was not complete.

The last sentence in the opinion of the Court refutes this position of the plaintiff, and declares the bar complete, in these words;

"The statute operates in confirmation of the title of the possessor, who has seven years peaceable possession by virtue of a grant, or deed founded on a grant; it does not operate against any particular description of legal title, but validates and makes indefeasible the title of the tenant; and consequently extinguishes and defeats all claims, powers, and incumbrances existing by 'force of any cause or matter had or made before' such peaceable possession having been obtained, and to which seven years possession is adverse." Page 47.

That case arose under the Act of 1797, which was the same in its scope and meaning as the Act of 1819, the latter of which was brought into the Code at §§ 2763-4.

The decree of the Chancellor, dismissing the bill, must be affirmed.