WALSH *et al. v.* TIPTON *et al.*

(*Nashville*, December Term, 1944.)

Opinion filed October 4, 1945.

W. C. Smith, of Jamestown, for complainants.

W. A. Garrett, of Jamestown, for defendants.

Mr. Justice Neil delivered the opinion of the Court.

This is an ejectment case in which the complainants seek to recover possession of fifteen hundred acres of land situated in Fentress County. The complainants, in their original injunction bill, filed June 14, 1941, describe the land by metes and bounds and allege that they are the owners in fee simple by title deed, and that they are en-

titled to the immediate possession of said land; that the defendants have no title or right of possession, but are setting up fraudulent claims under deeds of recent date which convey no title to them. An injunction was issued by the chancellor restraining the defendants from cutting timber upon the lands described in the bill.

The original bill was filed by Adelaide Mary Walsh individually and as executrix of the estate of Dorothy Ethel Walsh, a resident of Connecticut. Other complainants, who join in the suit and whose names need not be mentioned, are non-residents of the State of Tennessee. In addition to Ed. Tipton the bill names twelve persons as co-defendants, all residents of Fentress County, among this number being Ed. Crisp, Mrs. Ira Scroggins, John Horton, Fred Wilson, Emmit Hood, Moody Wilson, Shirley Hood, William Taylor, and Barney Winningham. All of the foregoing named defendants filed an answer in which they denied that complainants were the owners of the land sued for and averred that the claim of the complainants was champertous.

Following the filing of said answer an amended bill was filed in which the wives of certain original defendants were also named as co-defendants; also included were some additional persons not named as defendants in the original bill. Pro confesso was taken as to some of the defendants, and others filed disclaimers. A demurrer was filed by some twenty or more defendants to both the original and amended bill upon the ground that complainants did not allege that they were in possession of the described lands when the bill was filed, or had ever been in possession. This demurrer was overruled and a motion to dismiss was likewise denied.

Thereupon the defendants, on March 16, 1943, filed an answer and pleas, in which denial was made that com-

plainants were entitled to recover the land in question and averred that they, the defendants, had been in adverse possession of the lands occupied by them, and that by virtue of the "statute of limitations of one, three, seven, and twenty years" the complainants' right to possession was barred.

Before the case was brought to trial the defendants filed a petition averring that George L. Stockton, Clerk and Master, etc., instigated the suit in violation of law; that it was champertous and should be dismissed. In this petition said Stockton was taken severely to task for acting as agent for the complainants and for bringing said suit to secure possession as against the rights of the defendants in the court in which he was clerk. This petition was heard at chambers by the chancellor and the same was dismissed, following which a special clerk and master was appointed to act in the place and stead of the said Stockton. An exception was taken and this question was argued at great length in the Court of Appeals.

When the case came on for trial a jury was demanded by some of the defendants and it was thereupon set for hearing and tried as a jury case. The complainants' counsel submitted two issues of fact and requested that the chancellor submit them to the jury. These issues were not submitted. The chancellor submitted to the jury the following issues, which were anwered as indicated:

Issue No. 1. "Had the complainants and those through whom they claim, been in actual, adverse, open, notorious and exclusive possession of the lands sued for under registered assurance of title for a period of seven or more years before the bill was filed in the case?

"Answer: No."

Issue No. 2. "Had the defendants, Emmit Hood, Mary Hood, Shirley Hood, Moody Wilson, Etta Wilson, and

Cora Hood, any or either of them, been in actual, open, notorious, peaceable and uninterrupted possession of the lands they live on and claim, by themselves and those through and under whom they claim, to well defined boundaries set out and described in the entry No. 1216 and their respective deeds for a period of more than seven and more than twenty consecutive years, claiming the same to the full extent of the boundaries in said entry and deeds, next before the bill was filed in this case?

"Answer: Yes:"

At the conclusion of the evidence, counsel for the complainants moved the court "to dismiss the findings of the jury on the issues of fact and decide the case on the proof and evidence for complainants." The motion was overruled and exception taken.

The complainants thereupon moved the court for a new trial upon eighteen separate grounds. The first three grounds relate to the sufficiency of the evidence, the last being that "there was no material or competent proof in the case to sustain the jury's finding on either issue."

Contention was further made that complainants had shown a perfect chain of title and that Issue No. 1 should have been withdrawn from the jury; that the possessions relied upon by defendants were not under any color of title, Entry No. 1216 not being color of title, even for possessory purposes, the said entry not being possessed by either of the enterers at death; that no interest under said entry passed from the enterer to his heirs, etc. Other contentions were made which need not be mentioned at this time. They are found in Vol. 1, pp. 89-92, of the record.

The chancellor overruled the motion for a new trial and the defendants Emmit Hood, Mary Hood, Shirley Hood, Cora Hood, Moody Wilson, and Etta Wilson moved

the court to sustain the verdict of the jury in their favor and to enter a decree dismissing complainants' bill as to them, etc.

The decree of the chancellor was as follows:

"(1) That complainants have and recover of the defendants Ed Tipton, Moody Wilson, Etta Wilson, William Taylor, Barney Winningham, Horace Hood, Johnnie Hood, Etta Hood, all the lands described in the bill.

. . .

"(2) It is further ordered, adjudged, and decreed that as to the other defendants, towit, Mrs. Ira Scroggins, John Horton, Fred Wilson, Emmit Hood, Johnnie Allred, Shirley Hood, James Crisp, Catherine Crisp, Porter Crisp, Juanita Crisp, the last being minors represented by W. A. Garrett, gdn. ad litem, and Mary Horton, Mary Wilson, Mary Hood, Etta Wilson, Cora Hood, Paul Smith, Alta Smith, and Savage Allred, that the complainants are the owners of the land described in the bill and entitled to the possession thereof *except that part of the land described in the bill which is covered by and included in Fentress County Entry 1216* dated March 2, 1896, in the name of Jeremiah Hood and Henry Hood, and as to said land covered by said entry it is ordered and decreed in accordance with the verdict of the jury herein, which is hereby approved and made a part of the decree of the court herein, *and as to which entry and the land included therein the complainants are barred by the statute of limitations of seven years,* and the complainants' bill in so far as it seeks a recovery for any of the land within said entry is hereby dismissed." (Emphasis. ours.)

It is important to note at this time that among all the defendants named in the original bill and the amended bill only those named in Issue No. 2, or some one or more of them, were adjudged by the jury to have been holding

by adverse possession all the lands covered by Entry No. 1216. When the chancellor entered his final decree as above set out other defendants were included therein and were adjudged and decreed to be holding a possession upon said land adversely to complainants for more than seven years.

From all of the foregoing decree the complainants prayed and were granted an appeal to the Court of Appeals. The defendants also were granted a limited appeal. The Court of Appeals affirmed the decree of the chancellor. We granted certiorari and the case has been fully argued and briefed. Since the defendants did not file any petition for *certiorari*, the many questions argued by counsel are not before this Court for our determination. We have reviewed them, however, and find that they are without merit.

The complainants in their petition for *certiorari* have assigned a number of errors to the action of the Court of Appeals in affirming the decree of the chancellor.

Before considering the assignments of error on behalf of complainants, certain important facts should be stated relating to complainants' title to the lands sued for, as well as the possessory rights of defendants whose names are set out in the chancellor's decree.

First, it clearly appears from the record that the complainants were and are now the holders of the legal title to the lands in question. The deed from which they deraign title was duly registered in Fentress County and emanates from grants issued in 1836. The complainants show a perfect chain of title under valid grants by the State to the time of filing their original bill. Within this 1500 acre area a large part of the land embraced in Entry No. 1216, and taken out by Jeremiah Hood and Henry

Hood, is located. No grant was ever issued to anyone covering the entry in question. Jeremiah Hood, who took this entry, died about forty years ago. None of the defendants remembers him. Henry Hood, his co-taker, is now living, but is not a party to this suit. It is under this Entry 1216 that defendants named in Issue No. 2 claim to deraign title. The only deed under which any of the defendants claim was executed by J. M. Hood (sometimes called Jere Marshall Hood) to Shirley Hood and Emmit Hood in January, 1936, acknowledged on August 14, 1937, and recorded March 17, 1938. The said J. M. Hood is the illegitimate son of Jeremiah Hood.

A number of years ago the antecedents of complainants sold certain timber on the land now sued for to A. L. Hayes Company. It appears that the land was leased to the A. L. Hayes Company for a term of six years for the purpose of building houses, erecting mills, and that the latter's agent, William Parks, built some twenty-four or more houses on the land, erected a mill and a barn that would house sixty head of mules. The Company carried an extensive lumber and stave business for several years under this lease. The place where these buildings were located is referred to in the record as "Parkstown," evidently named after William Parks. This 1500 acre tract of land was being looked after by one Graham Duffield, who held a joint interest with other complainants. At the conclusion of the timber and stave business, about 1910, Duffield left and thereafter Mr. J. T. Wheeler, a lawyer at Jamestown, now deceased, rented some of the buildings and paid taxes for and on behalf of complainants. We find from the proof that Emmit Hood and Shirley Hood, about the year 1929, took over some of these houses which had been built under the above mentioned lease. The complainants paid taxes on this prop-

38

erty up to and including the year 1937, which was about the time that Emmit and Shirley Hood took the deed from the illegitimate son of Jeremiah Hood. None of the defendants claim to be heirs of the said Jeremiah Hood or his co-maker of Entry 1216.

In response to a per curiam memorandum filed by the Court, the defendants' counsel frankly admits that the said defendants have no registered assurance of title for seven years or longer. He says: "They claim under their deed from J. M. Hood to Shirley and Emmit Hood, dated the 3rd day of January, 1936." It is insisted that J. M. Hood is one of the heirs of Jeremiah Hood; that the said makers of this entry and their heirs were in possession for more than twenty years next before the bill was filed.

There are two errors assigned by complainants that are determinative of this case:

(1) That Issue of Fact No. 2 was improperly submitted because Entry No. 1216 has no place in Issue No. 2; that the Chancellor committed error in charging defendants' "Special Request" to the effect that said entry amounted to a color of title under which title could be perfected by adverse possession of seven years, etc. The special request is as follows:

"Defendants Emmit Hood, Mary Hood, Shirley Hood, Cora Hood, Moody Wilson, and Etta Wilson, request the court to charge the jury and tell them that the Fentress County Entry No. 1216 to Jeremiah Hood and Henry Hood, dated March 2, 1896, as a matter of law is a special entry and is a color of title, under which title can be perfected by adverse possession of seven (7) consecutive years next before the bill was filed, and if you shall find that the defendants and those through and under whom they claim had been in the exclusive, quiet, peaceable, and undisturbed possession of the lands under said entry

and their respective deeds for more than seven and/or for more than 20 years next before the bill was filed in this cause, you should answer this second question yes.''

(2) The Court of Appeals erred in holding that complainants could not recover all the land sued for, because they had not shown possession of all of it, and that Issue No. 1 was not a necessary issue after the fact had been shown that the complainants had shown a perfect record title to the land sued for.

It is insisted that Issue No. 1 ''became an immaterial issue to complainants (no matter how found) after the Court of Appeals had concurred with the chancellor that complainants had shown a record title to the land.''

There can be no doubt in the mind of the Court but that complainants' record title to the land was clearly established. The chancellor should have withdrawn Issue No. 1 from the jury and entered a decree sustaining com-plainants' bill as to all lands sued for, except lands actually enclosed by defendants and held adversely by them for seven or more years next preceding the filing of the bill. Issue No. 1 was submitted to the jury evidently upon the theory that complainants had not been in pos-session of the lands sued for ''under a registered as-surance of title for seven or more years''; that title and right of possession had been abandoned.

There is no merit in the argument of defendants' counsel that the complainants had abandoned the prop-erty. We find no evidence in the record tending to show abandonment, or that they had not been in possession, other than the statement to the effect that the owners had not been seen about the property in recent years. In *Phy* v. *Hatfield*, 122 Tenn. 694, 696, 126 S. W. 105, 135 Am. St. Rep. 888, 19 Ann. Cas. 374, it was held:

• "Indeed, in order to justify the conclusion that there has been an abandonment, *there must be some clear and unmistakable affirmative act indicating a purpose to repudiate the ownership.*" (Italics ours.)

■ The Court cited *Bear Valley Coal Co.,v. Dewart*, 95 Pa. 72, 78, and expressly approved the following statement: "The doctrine of abandonment does not apply to a perfect title but only to imperfect titles." The foregoing statement needs no authority to support it. It is based upon the common experience of mankind, for one does not ordinarily abandon property to which he has an indefeasible title. It is otherwise where the title is imperfect or he has no title at all.

The main questions now before us are the alleged error of the chancellor in submittnig Issue No. 2 to the jury, and in charging defendants' Special Request that "as a matter of law" Fentress County Entry No. 1216 to Jeremiah Hood and Henry Hood was a special entry and "is color of title under which title can be perfected by adverse possession." Also that, "The Court of Appeals erred in holding that the chancellor rendered a proper decree in the case and correctly adjudged the cost."

■ We are well aware of the fundamental rule in ejectment cases that the complainant must rely upon the strength of his own title and not upon the weakness of his adversary; and that as a matter of defense the defendant may show an outstanding title in a third party.

In the instant case the defendants, Emmit Hood and Shirley Hood, are relying upon Entry No. 1216, and claiming title by adverse possession of seven and twenty years. These defendants and those claiming under them not only rely upon said entry but upon their deed from J. Marshall Hood, the illegitimate son and alleged heir of Jeremiah Hood.

When counsel for the complainants moved the court to withdraw the issues from the jury and pronounce a decree in their favor, the learned chancellor expressed the opinion that complainants had established by grants and other deeds of conveyance a perfect chain of title to the lands. He felt constrained however to submit to the jury the question of whether or not the complainants had been in actual or constructive possession of said lands, and, secondly, whether or not defendants had been in possession and holding openly, continuously, and adversely under a claim of right against the true owner. In his general charge to the jury he made no mention of Entry No. 1216 as a color of title under which defendants were claiming adversely as a matter of right. The special request emphasizes the defendants' insistence that said entry "as a matter of law is a special entry and is a color of title, under which title can be perfected by adverse possession of seven and/or twenty years," etc.

While an entry standing alone might properly be called a color of title, it does not appear in the instant case that defendants had title to any of the lands sued for other than the deed from Jere Marshall Hood, which was dated January 3, 1936, acknowledged August 14, 1937, and recorded March 17, 1938. There is no evidence that J. M. Hood, their vendor, was in possession at that time or had ever been in posession. Moreover, he being an illegitimate did not inherit anything from his father Jeremiah Hood. Under Code section 8385 illegitimates inherit land only from their mother. It does not appear that Jeremiah Hood was in possession of the land when he died, or that his heirs were in possession following his death. Henry Hood, the other maker of Entry 1216, was a witness for the defendants. He did not claim that any of the defendants were his tenants. He testified that

when he left he put John Hood, his brother-in-law, in possession and that John raised his family there. The defendants are not claiming possession under John Hood. The witness Henry Hood further testified that he had not been on the land "but two or three times in the last fifteen years or twenty." While he does state that some of the Hoods have been in possession all the time since he left, he only mentioned the name of his brother-in-law, John Hood, and these defendants claim no title or possession under him. This witness flatly contradicts the statement of Emmit Hood that his father, Jeff, was his tenant. He says, "I don't know who he lived there under; Jim Roysden lived there. He might have went there under Tom, my brother, I don't know." There is an affidavit in the record by Tom Hood that he never heard of the alleged holdings of these defendants until the date of his affidavit, April 12, 1944.

The principal defendant, Emmit Hood, testified as follows:

"Q. Who did you go there under? A. Henry Hood and Marshall and all of them."

He further contended his father "went there under Henry and Marshall." When asked "why he did not get a deed from Henry and all the Hood heirs," he replied, "I just got it from Jere Marshall."

"Q. You had no written contract with the Hood heirs? A. I got a deed.

"Q. I mean a contract about holding possession. A. Nothing only that deed."

It should be here stated that when Jere Marshall Hood signed this deed he said to Shirley Hood, "I won't sign it if it bothers Jim Beaty, *I don't own it*, and if it bothers Jim I won't sign it." This witness also testified that Shirley Hood asked that the deed be dated back "to

make his possession older." It would thus appear from the testimony of this disinterested witness, as well as Emmit Hood, that defendants were not claiming possession except under this deed. They asked that it be dated back *to make the possession older.*

We find that under the undisputed facts the jury could not have found that the defendants had held possession for twenty years because Emmit Hood only claimed to have entered upon the land in 1929. He testified that he tore down some houses at "Parkstown" and used the lumber "to fix him up a six-room house." These houses were never claimed by any of the Hoods, certainly not by Jeremiah Hood or Henry Hood or their heirs. The statement by Emmit Hood that he claimed possession under Henry Hood is unsupported by the evidence. It is more of a conclusion than a statement of fact. He contends that he succeeded to his father's, Jeff Hood's, possession, and that the latter held under Henry Hood (co-maker of Entry 1216). We find that Henry Hood testified that "he did not know who Jeff Hood held under." Again, when Emmit Hood was asked if he had any contract with any of the Hoods, he answered, "Nothing only that deed," referring to the deed from Jere Marshall Hood and dated in 1936. Since he had no agreement with any of the Hoods for a possession, but entered upon the land tortiously, then he did not hold a possession under Entry 1216 at all. Moreover, the conclusion is inescapable that the makers of Entry 1216 realized from the beginning that they had no title and abandoned it. They and their heirs and assigns, if there were any, never perfected said Entry into a grant, nor questioned the complainants' title, not even making an oral protest against complainants' extensive lumber and mill operations, which were carried on for years. That an entry

such as we have here may be lost by abandonment is clearly supported by the authorities. In Thompson on Real Property, section 2567, there appears the following:

"A merely equitable title, not perfected into a grant, or vested by deed, as in case of settlers under the public land laws, may be lost by abandonment."

In support of the text the author cites our own case of *Phy* v. *Hatfield, supra.*

■ It may be true that some of the Hoods have resided in Parkstown and that immediate vicinity, but any possession claimed by them as emanating from the makers of this entry, and held under it as color of title, is too shadowy to be considered adverse to the complainants. We find no material evidence in the record to warrant the conclusion that the defendants were holding a possession under Entry 1216, and their special request should have been denied.

Considering that the defendants do have a possession or possessions located within the boundaries of the land sued for and within Special Entry 1216, since the entry is not a color of title, there being no privity of estate between them and the makers, the defendants cannot set up a defensive title to the extent of its boundaries.

, ■ ■ While these defendants held such possession tortiously (certainly without color of right) for a number of years prior to the execution of the deed by J. M. Hood, the statute of limitations did not begin to run in their favor to the extent of the boundaries of said entry from the date of the beginning of their possession. In *Barnes* v. *Vickers et al.,* 62 Tenn. 370, it was held: "A party cannot connect his possession of the land previous to obtaining a deed with his subsequent possession under a deed, to make out the seven years." We know of no case and none has been cited by counsel holding that

where one enters upon land without any claim of right he may attach the period of such a possession with the time held under a subsequent deed to make out the seven years.

In *Tennessee, etc., R. Co.* v. *Mabry et al.*, 85 Tenn. 47, 53, 1 S. W. 511, it was held that the most defective title may override the most perfect title and become good and indefeasible itself, by process of time and adverse possession. But where a defendant does not hold under any color of title, but has been in open, notorious, and continuous possession for the prescribed period, he is protected only to the extent of his actual enclosures.

In *Sharp* v. *VanWinkle*, 80 Tenn. 15, 19, also in later cases, it was held that "the second section [of the act] was intended to protect the adverse possession for seven years . . . if held under no title at all." Where one claims to hold possession under color of title, regardless of the nature of the instrument, the burden is on him to show that he holds by virtue thereof in order to set up a defensive title to all the property that is described therein by metes and bounds. And where it is shown that the alleged color of title under which he claims is one that is outstanding in a third person, an entry by defendant under no claim of right is insufficient to establish a possession, as where such entry is tortious.

In 28 C. J. S., Ejectment, sec. 39, p. 889, it is said: "A defendant who is a mere trespasser or intruder cannot set up title in a third person to defeat recovery, for where a person intrudes without claim of right, upon the actual possession of another, there is reason in compelling him to restore the possession before he is permitted to show title in a third person."

We have consistently adhered to the rule that where such defense is made it must appear that the out-

standing title relied on is a present subsisting, operative title. In a recent case, decided by this Court on June 30, 1945 (*Stockton et al.* v. *Hutchison et al.*, 182 Tenn. 616, 188 S. W. (2d) 607, 609), MR. CHIEF JUSTICE GREEN, speaking for the Court, said, ". . . the defense of outstanding title is not favored in the courts of America," citing *Howard* v. *Massengale*, 81 Tenn. 577, wherein it was said that, "To defeat an action of ejectment at law even, the outstanding title must be a present, subsisting, *operative and available* title, not one reverted, barred or abandoned." (Italics ours.) See also *Earnest* v. *Little River Land & Lumber Co.*, 109 Tenn. 427, 75 S. W. 1122.

It appears from the record before us that the only defendants who claim a possession under Entry 1216, and that said entry is a color of title, are Emmit Hood and Shirley Hood, and those claiming under them. This is shown not only by the evidence but from the further fact that they are the only ones whose names are made to appear in Issue Number 2, said issue relating to the possession claimed by the defendants under the entry.

 Responding further to the contention of counsel that they are not required to show as a defense any privity of estate between themselves and the makers of said entry, we hold where lands are held under valid, registered deeds, emanating from a grant by the State in 1836, that the makers of a junior entry to the same lands or any part thereof, who have failed after a long period of time to perfect it into a grant, there being other attendant circumstances also, are subject to an inference which is irresistible that they have abandoned their inchoate interest. *Crutsinger* v. *Catron*, 29 Tenn. 24, 29, 30. Such a title is not a present, subsisting, operative title in a third person, and is not available as a defense to a suit in ejectment. The authorities are abundant,

and need not be cited, to the effect that a deed or other instrument purporting to convey title to land cannot be claimed as a color of title in support of possession by one who is a stranger to such an instrument and who shows no privity of estate with anyone claiming under it. If no privity of estate is shown, as in the instant case, it results that those claiming a possession are protected only to the extent of actual enclosures, held openly, notoriously, continuously, and adversely, for the prescriptive period next preceding the filing of the bill against them.

The defendants in the instant case were naked trespassers upon the lands in question and their deeds which they took in 1937 are not available as registered assurance of title because they were not in adverse possession under said deeds for seven or more years prior to the bringing of this suit by complainants.

We think under the evidence the jury could well find that defendants were in adverse possession of that part of the land *actually enclosed and under cultivation.* The chancellor however was in error in holding and decreeing that defendants' possession extended to and included all the land described in Fentress County Entry 1216.

In *Dyche* v. *Gass' Lessee,* 11 Tenn. 397, the Court held that, under the Acts of 1819 (Code section 8584), a trespasser in possession of land, without color of title, is protected to the extent of his actual enclosures, in seven years, if his possession has been adverse, positive, and notorious for the whole term. See also *Waddle* v. *Stuart,* 36 Tenn. 534; *City National Bank, etc.,* v. *Knoxville,* 158 Tenn. 143, 11 S. W. (2d) 853.

The complainants' assignments of error referred to in this opinion are sustained, and the cause reversed and

remanded to the Chancery Court of Fentress County. A decree will be entered in this Court sustaining complainants' bill as to all the lands sued for except such as were actually enclosed by the defendants for a period of seven years or more before the bill was filed. The suit is dismissed as to all such lands thus enclosed by any and all of the defendants and held by them openly, notoriously, and continuously for a period of seven years, as aforesaid.

The cause is remanded to determine the extent of the enclosures, also to determine the amount and value of timber taken and disposed of by defendants outside of and beyond the actual enclosures held adversely, as aforesaid, the value to be determined as of the date of taking and the amount calculated for a time within the statute of limitations. The costs of the appeal will be paid by the defendants, while all other costs will be adjudged by the chancellor upon final disposition of the case.