**C. W. HUNTER COMPANY et al.,**
**Plaintiffs and Cross-Defendants,**
**Appellants and Appellees,**

v.

**T. G. UHLHORN et al., Defendants and**
**Cross-Plaintiffs, Appellees and**
**Appellants.**

Court of Appeals of Tennessee,
Western Section.

Oct. 16, 1979.

Certiorari Denied by Supreme Court
Jan. 21, 1980.

Jess D. Ewing, W. Ray Jamieson, Ewing, Jamieson & Miles, Memphis, for plaintiffs and cross-defendants, appellants and appellees.

Earl P. Davis, H. C. Tanner Davis, Davis & Davis, Memphis, for the defendants and cross-plaintiffs, appellees and appellants.

EWELL, Judge.

This is a suit in ejectment filed in the Chancery Court of Shelby County on April 21, 1961, by the original plaintiff, C. W. Hunter Company, against several defendants, including Frances S. Uhlhorn. In the complaint plaintiff contends that an area of land consisting of approximately 200 acres, being a portion of a larger area, bounded on the east by the Mississippi River and known as Island 40, though occupied by Uhlhorn, is the property of Hunter. Because Uhlhorn had begun to cut timber on the land, Hunter applied for and obtained an injunction restraining Uhlhorn from cutting timber; and while Uhlhorn was under such restraint, Hunter contracted with Shannon Brothers Lumber Company to go upon the land and cut a portion of the timber. Thereafter, Uhlhorn filed a cross-action against Hunter claiming damages for the timber cut from the land in question.

During the pendency of this litigation several of the parties died and were replaced by legatees and devisees. By warranty deed dated September 20, 1962, Hunter Company conveyed its claim of ownership of the subject land to Manuel J. Hunter, Chatham Hunter and Margaret Polk Aden. About the same time Anderson-Tully Company acquired all the stock of Hunter Company and on September 24, 1962, adopted a plan for the complete liquidation of Hunter Company pursuant to which all its assets were transferred to Anderson-Tully Company.

By consent order Manuel J. Hunter, Chatham Hunter and Anderson-Tully Company were made additional parties cross-defendant to the cross-bill, as amended and supplemented, of Frances S. Uhlhorn. On September 10, 1974, Manuel J. Hunter died and by order entered thereafter the cause was revived and continued in the names of Chatham Hunter, Margaret Polk Aden, Joe M. Russell, Margaret Myers and Louise Glover Dean, as successors in interest to C. W. Hunter Company and as legatees and devisees of Manuel J. Hunter, deceased. The plaintiffs and cross-defendants below will be referred to herein as plaintiffs or Hunter.

Frances S. Uhlhorn died during the course of the litigation and thereafter the cause was revived in the names of her lega-

tees and devisees, namely, Frances Uhlhorn Wunderlich, Horace M. Uhlhorn, William V. Uhlhorn, Trustee, Anne W. Broadfoot, Theodore Gilliard Uhlhorn, IV, Walker S. Uhlhorn, Jr., Frances P. Uhlhorn and Aylmarie Alhgren. The defendants and cross-plaintiffs below will be referred to herein as defendants or Uhlhorn.

Upon the final hearing Chancellor William H. Inman, sitting by designation of the Supreme Court of Tennessee, without a jury, found that Hunter Company failed to sustain its claim of title to the subject land and dismissed the original complaint. He also dismissed Uhlhorn's cross-action holding that Uhlhorn's interest in the subject real estate was acquired after the timber had been cut. The memorandum opinion of Chancellor Inman filed in the case on November 8, 1977, is as follows:

This is an action in ejectment. The plaintiff [1] claims ownership of a 200 acre alluvial tract asserted to be accretionary to the Kensear Land in place, and to the Melvin Entry on land allowed to Kensear. It is not disputed that the plaintiff owns the fee in the Kensear-Melvin acreage; the issue is whether it owns the accretions thereto. Plaintiff deraigns its title to the Kensear-Melvin acreage from a grant, and, in addition to the accretion theory, asserts ownership to the 200 acres by virtue of the usual Statutes, adverse possession, and payment of taxes.

Defendant, Uhlhorn, claims ownership of the accretionary land by virtue of a deed from the State of Tennessee. The area [2] has been subject of prior litigation which culminated in the execution of a deed from appropriate State officials to Uhlhorn for the land in controversy. Plaintiff offers much criticism of this deed, including a denial of its validity, because the signatories were not statutorily authorized to execute it. It should be parenthetically noted that at all times material only the Legislature, by Act or Resolution, could convey State-owned property, except those conveyances made pursuant to settlement or disposition of claims. The court does not believe that a conveyance from the State should be treated as cavalierly as the plaintiff urges, and it is upon this conveyance that the Court, in part, predicates the judgment to be entered in this case.

It is a familiar rule of law in Tennessee, that, in ejectment cases, the plaintiff cannot rely upon the weakness of his adversary's title. He must rely, if at all, upon his own title strength and, absent a strong showing of title in himself, his efforts at ejectment must fail. Plaintiff insists that the Kensear and Melvin lands, which it owns in fee, expanded into the disputed 200 acre tract. If land is riparian, accretions thereto follow the land. This is familiar law. But if accretions have formed when a conveyance of the original tract is made, it is familiar law that a conveyance not describing the accretions is inefficacious to convey them; and approximately half of the accretionary lands had formed at times material herein when the land was conveyed. The land claimed by the plaintiff as accretions was land in place, and not conveyed. Therefore, plaintiff's accretion theory must fail. Similarly, plaintiff's theories of seven-years color of title, twenty years adverse possession, registration of thirty years, and payment of taxes must fail because the preponderance of the evidence is not supportive thereof.

The plaintiff's indices of title [3] do not equate to Uhlhorn's claim of title predicated upon the conveyance from the island. The entire area is now one contiguous mass known geographically as Island 40.

1. The corporate charter of the plaintiff was surrendered during the pendency of this action. Its shareholders, by proper order, succeeded to its status.

2. Island 40; subject land is a portion of a subdivision to Island 40, more or less a satellite

3. The evidence does not support the plaintiff's insistence that it was in possession of the accretionary land.

State. This point is perhaps not relevant in an ejectment action, but reinforces the recurring theme that plaintiff must prove his title, and rise or fall upon the strength of it. The point is simply that the defendant's title is stronger.

Plaintiff cut, removed and sold timber from the two hundred acre tract during the pendency of this action. Uhlhorn seeks damages for this fact, claiming to be entitled to recover the manufactural value of nearly 1,000,000 feet of timber. The point is troublesome, because the removal of the timber occurred prior to Uhlhorn's acquisition of title. Uhlhorn claims to have been "equitably possessed" of this land to the extent that she should be entitled to the timber, or damages for its cutting, but this contention begs the question and Uhlhorn cannot have the best of separate worlds. She predicates her assertion of title squarely upon the conveyance to her by the State. This being so, Mrs. Uhlhorn can scarcely claim damages for timber removed prior thereto. It is unnecessary here to speculate as to who is entitled to the timber, or its proceeds, in view of the controlling Statute of Limitations, if for no other reason.

Also involved is an eight acre tract. This controversy essentially presents a boundary dispute, and it is sufficient to hold that the Supreme Court settled the issue in the *Clements v. Riegel* case. The boundary is co-extensive with the Flatt entry.

The Complaint is dismissed; the Counter-Claim (denominated Cross-Bill) for damages is dismissed; the boundary dispute is adjudicated as aforesaid. Judgment accordingly, usual times for perfecting appeal(s) and filing record.

Costs equally to all parties.

Both Hunter and Uhlhorn have appealed. The boundary line dispute involving an eight acre tract is not an issue on appeal and will not be addressed by this Court. Hunter has filed twenty assignments of error which when condensed raise three substantial issues determinative of the appeal, to wit:

1. Whether or not Hunter took the subject land as accretions to its contiguous land acquired by deed.

2. Whether or not Hunter acquired fee simple title to the subject land by adverse possession and the payment of real estate taxes.

3. Whether or not the deed under which Uhlhorn claims title is absolutely void.

The sole error assigned by Uhlhorn was the failure and refusal of the Court to award damages in the amount of the value of the timber cut and removed by Shannon Brothers Lumber Company under contract with Hunter.

This cross-appeal comes to us under T.C.A. 27–303 accompanied by a presumption of the correctness of the judgment of the Trial Court. We have reviewed *de novo* the voluminous record consisting of twenty four depositions of nineteen witnesses constituting more than one thousand pages of testimony supported by numerous and detailed exhibits. The case was in court for more than sixteen years before the final hearing and the bulk of the proof came through depositions taken over a two year period between 1963 and 1965. Suits of this type are by nature complex and long lasting. This one was no exception. It has already outlived a number of the principals.

Essential to an understanding of the issues and the Trial Court's ruling thereon is a view of the relevant geographical history. In the case of *Clements v. Riegel,* Cause No. 25944 R.D. in the Chancery Court of Shelby County, then Chancellor John E. Swepston included in his findings of fact and opinion a helpful summary of the changes which had occurred in the general area since 1876, as follows:

In the year 1876 the Mississippi River by an avulsion cut through a narrow neck of land jutting out from the Tennessee shore and formed Centennial Island.

Just below this point it cut across a strip of Arkansas land and formed Brandywine Island. This occurred within about forty-eight hours and the stream suddenly and perceptibly changed it course and eventually entirely abandoned the old bed in both of these places, which arose over a period of several years. The status of the boundaries and of the new land has been before the State and the Federal Courts in Muncie Pulp and Stockley cases and the law of avulsion was definitely applied, and it was held that the boundaries did not change and that new land was not accretions.

About five miles below the lower side of Centennial Island and about two and one-half miles below Brandywine Island is the head of Island 40.

In 1876 the river flowed around the west side of Island 40, which was separated on the east from the Tennessee mainland by Tennessee Chute, which had a moving stream only at fairly high water.

After the avulsion above in 1876 the river current was thrown more against the head of Island 40, and some of the current began to go through Tennessee Chute, which was widened a little more each year until eventually the channel of the river went down what had been Tennessee Chute on the east side of the Island.

As this gradually occurred the volume of water going between the Island and Arkansas diminished pari passu. There remained, however, on the west side in the old channel a living stream of water until about 1907. From then on the land continued to build and now Island 40 can be reached on foot from the Arkansas land contiguous thereto.

The *Clements* case involved land east of and contiguous to the 200 acres at issue in this litigation. The decision of Chancellor Swepston was appealed to and ultimately affirmed by the Supreme Court in an unre-ported opinion written by Special Justice Prewitt. That case is material to the findings in this case as hereinafter noted.

The case of *State of Tennessee ex rel v. C. W. Hunter Company, Mrs. Frances S. Uhlhorn, et al,* in the Chancery Court of Shelby County involved land west of and contiguous to the land in *Clements,* including the 200 acres here at issue. In that case, upon which we will later elaborate in more detail, Hunter in section V of its original answer gave a helpful history of the specific area now under consideration. The complete record of that case is an exhibit herein, and we quote from portions of Hunter's answer.

[I]n 1840 and both before and after that time the main channel of the Mississippi River ran between Island 40 and the main Arkansas shore and said main channel was the Westerly boundary of said Island, and the boundary between the States of Tennessee and Arkansas.

That from the earliest times of which there is any records or maps available covering this reach of the Mississippi River, there was one or more independent islands or island formations lying in the Mississippi River between Island 40 and the Arkansas shore, on the east side of the center thread of the main channel, and hence within the boundary of the State of Tennessee, and title to which was vested in the State of Tennessee. That these conditions existed prior to the year 1840 and continued for many years thereafter.

To better understand the lay of the land and the location of the Mississippi River described above, reference is made to the following plat (designated and herein referred to as Plat A) which is basically Hunter's exhibit no. 4 modified by this Court by the addition of information considered relevant to an understanding of the conditions then existing as compared to conditions at time of trial.

[See following illustration.]

PLAT A

Quoting further from the aforementioned answer of Hunter we get a verbal picture of changes which subsequently occurred over a period of years:

That by reason of changes in the flow of the current of said river and other natural causes occurring both prior and subsequent to 1840, said islands were added to from time to time by accretions or otherwise until in the course of years they formed one body of land, all of which was separated from Island 40 by the Mississippi River. That this formation commenced as a tow-head or new-made island

in the Mississippi River entirely separate and distinct from Island 40, or any other island, and that by its growth as aforesaid it grew to be an island of 2000 acres or more in extent by the year 1887, but at all times a chute lay between it and Island 40. Finally by natural causes said island became joined to the main shore of Island 40 along its entire westerly boundary, and the said river continued to flow west of this entire body of land.

That the process of the joining of said new island or independant formation to said Island 40 was slow and gradual and continued over a period of years. That when said joining first commenced, the physical facts then existing clearly distinguished the land which constituted the new island from the land which formed original Island 40, and as such joining between the two islands increased in extent, the physical facts at all times clearly indicated what land formed part of the new island and what land formed part of original Island 40. That although throughout the course of subsequent years such physical facts evidencing the proper division line between original Island 40 and said new island, from natural causes, have become more and more indistinct, still to this day the natural and physical evidences on the land in controversy clearly demonstrate the correct location of the westerly boundary of original Island 40 and also the land which formed the new island above referred to and which later became joined to said Island 40. That at or about the time of the completion of the joining of the two bodies of land as above described, the main channel of the Mississippi River shifted to the east of Island 40 and followed the course of what was originally known as Island 40 Chute, though the channel west of Island 40 continued to be navigable. Now all of said Island 40 which remains, together with the new island above described, all lie on the west side of the Mississippi River as it now runs, and both tracts of land for years have appeared and now appear as a continuous body of land on the Arkansas side of the Mississippi River, and said body of land for years has been and is now joined to the main Arkansas shore, though a part of Tennessee.

The following plat (designated and herein referred to as Plat B) depicts the area at the time this litigation was instituted and after the above described changes had occurred. This plat is basically Uhlhorn's exhibit Z–4 with certain modifications of this Court made for the purpose of correlating this plat (Plat B) with the earlier plat (Plat A) and designating the 200 acres involved in this litigation as well as the areas involved in the prior suits. By referring to the tracts of Durham, Potter and Cherry on both plats as well as lots 1, 2 and 3 in the names of Riley, Alverson (Alberson) and Ikensear (Kensear), respectively, it will be readily observed that the same geographical area is represented on both plats. The differences demonstrated by a comparison of the two plats results from the changes in the Mississippi River above described.

[See following illustration.]

PLAT B

Hunter's claim to the 200 acres in question rests upon ownership of the 20.5 acre tract designated lot 3 (Ikensear) and the 97 acre tract designated Melvin. Title to the Ikensear tract is traced back to a grant from the State of Tennessee to Mike J. Ikensear dated April 9, 1891. Title to the Melvin entry is traced to an entry made by J. M. Melvin on March 14, 1901. Both tracts were conveyed by Melvin to Moody in 1903 and by Moody to C. W. Hunter in 1914. C. W. Hunter conveyed to Hunter Company on March 2, 1928. The legal description of both tracts has not varied and is as follows:

[L]ocated upon Island (40) and more particularly described in Section 3, Range 9 of the 11th Surveyor's District and in the 17th Civil District of Shelby County, being south part of formation in the Mississippi River southwest of Island 40 in said River and being Lot 3 as shown on map recorded in the Register's Office of Shelby County, Tennessee and bounded as follows:

Beginning at the southwest corner of Lot No. 2, thence South 69½° East, 8.36 chains, South 80° East 11.03 chains, North 87° East 9.30 chains, North 77° East 4.66 chains, North 45° West 2.29 chains, North 47° West 10.70 chains, North 36½° West 2.15 chains, South 70° West 23.30 chains to the beginning. Containing 20½ acres. Also a lot or parcel of land joining the above beginning at Sheers N.W. corner at a small cotton wood marked X at Albersons South West corner, thence S. 70° W. (Mag.) 26.4 chains to the water's edge. Thence S. 57° E. 18 chains, thence S. 58½° E. 13.24 chains, thence S. 63° E. 12.81 chains S. 67° E. 12.61 chains, thence 68° E. 9.20 chains to Mr. Flatts S.W. corner. Thence N. 20° E. to Berchardt line thence N.W. to the beginning.

Hunter Company insists that it owns the 200 acres as accretions to the Ikensear and Melvin tracts. Uhlhorn claims title through a deed from the State of Tennessee dated February 23, 1962, which was supported by a consideration of $6,283.00 paid by Uhlhorn and came about in connection with the dismissal of the original bill in the case of *State of Tennessee ex rel. v. C. W. Hunter Company, Mrs. Frances S. Uhlhorn, et al.* in the Chancery Court of Shelby County. It is necessary that we now briefly review that case and the aforementioned *Clements* case in order to place in proper perspective the conflicting claims of Hunter and Uhlhorn.

In *Clements* the complainants were the owners of the 195 acre Cherry tract shown on Plat B and claimed the land south to Old River and west to the line designated "Blue Line" as accretions. The suit in ejectment was filed February 24, 1921, against defendants who claimed the accretionary land under more recent entries and grants from the State of Tennessee. During the course of the litigation Hunter acquired the interest of the original defendant, Riegal, in and to the subject land. The defendants insisted and the Court found that the land in question was not an accretion to the 195 acre Cherry tract but was part of a separate island formed west of and entirely apart from Island 40 and that over the years said island, so formed, enlarged to such an extent that it connected to Island 40 and the Cherry tract. However, the State of Tennessee had intervened in the case insisting that the entries and grants under which defendants claimed were void because issued pursuant to the Acts of 1847, Chapter 20, which contemplated only lands in existence at the time of its passage. Both the Trial Court and the Supreme Court so construed the act in question and the State prevailed against the complainants upon the ground that said lands were not accretions to the Cherry tract and against the defendants upon the ground that said lands were in the bed of the Mississippi River and not lands in place in 1847, rendering void the grants under which the defendants claimed title. Judgment was entered in favor of the State of Tennessee as to all defendants with the exception of the owners of the Flatt 132.92 acres who prevailed under the theory of adverse possession.

On August 8, 1933, while *Clements* was pending, the State of Tennessee filed in the Chancery Court of Shelby County the suit of *State of Tennessee ex rel. v. C. W. Hunter Company, Mrs. Frances S. Uhlhorn, et al.* seeking to quiet and confirm title to all of that land shown on Plat B as lying west of the "Blue Line", south and southwest of the south boundaries of Durham and Potter, and north and northeast of Old River. On August 30, 1933, Hunter filed an answer from which we have heretofore quoted extensively. In that answer Hunter claimed title to the Ikensear 20.5 acre tract (lot 3) and Melvin 97 acre tract but did not allege ownership of the 200 acres at issue in this litigation. Uhlhorn, then owner of the Potter 220 acres, claimed the entire area, including the subject 200 acres, claimed by the State of Tennessee. In addition to her answer Uhlhorn also filed a cross-bill against several of her co-defendants including Hunter. Hunter in answering the cross-bill of Uhlhorn again did not allege ownership of the 200 acres in question in this litigation. It was not until May 31, 1963, more than seven years after the state's original bill had been dismissed, that Hunter by an amendment to its answer to the Uhlhorn cross-bill, alleged ownership of the said 200 acres. The original bill dismissed on May 16, 1956, by "Consent Order Dismissing Original Bill as Amended" provided as follows:

> This cause came on to be heard upon the motion of Complainant to be permitted to dismiss its Original and Amended and Supplemental Bills heretofore filed in this cause, where it appeared to the Court from the statement of counsel made in open Court that certain of the Defendants in this cause, namely, Mrs. Frances S. Uhlhorn, Wils Davis, O. W. Gauss, Randolph Ellis, Parker Henry and the heirs of B. A. Davis, had agreed to pay to

Complainant the sum of Eight Thousand Five Hundred ($8,500.00) Dollars in full settlement of the claim of the State of Tennessee to the tract of land involved in this case and claimed by the said Defendants,

> And it further appearing to the Court that the motion was in order and should be granted,

> And it further appearing to the Court that the Bill should likewise be dismissed as to the other Defendants in the said cause, that being the wish and desire of Complainant.

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that by consent of the parties the Original and Amended and Supplemental Bills of Complainant be, and they are, hereby dismissed with prejudice.

Hunter, although a defendant, was not a party to the settlement agreement and paid no portion of the $8,500.00 consideration. Hunter did indirectly benefit from the settlement in that the bill was dismissed with prejudice as to all defendants thereby relinquishing any claim which the State of Tennessee may have had to the Ikensear 20.5 acre tract and the Melvin 97 acre tract.

The pro rata share of Uhlhorn in the $8,500.00 settlement figure was $6,283.00 [4] which was paid to the State of Tennessee.

The deed to Uhlhorn subsequently executed by the State of Tennessee is as follows:

> THIS INDENTURE, made and entered into this 23rd day of February, 1962, by and between the STATE OF TENNESSEE, party of the first part, and FRANCES S. UHLHORN, party of the second part.

> WITNESSETH:

> WHEREAS, in March, 1956, in the case of State of Tennessee, Ex. Rel. Roy H.

---

4. The total settlement figure set forth in the dismissal order was $8,500.00. This figure related to the land claimed by the several defendants named in the order. It appears that Uhlhorn paid her pro rata share of $6,283.00 and that the additional $2,217.00 was paid by the other named defendants. However, the deed from the State of Tennessee to Uhlhorn reflects that the total consideration of $8,500.00 was paid by Uhlhorn.

Beeler, Attorney General, vs. C. W. Hunter Company et al, No. 39876, then pending in the Chancery Court of Shelby County, Tennessee, a compromise settlement was made between the STATE OF TENNESSEE, acting through the Governor and with the approval of the Attorney General and Comptroller, in conformity with the terms and under the authority of Section 20–1703, Tennessee Code Annotated, and FRANCES S. UHLHORN. In said settlement it was agreed that FRANCES S. UHLHORN would pay to the STATE OF TENNESSEE the sum of Eight Thousand Five Hundred ($8,500.00) Dollars; that said cause would be dismissed, with prejudice, as to FRANCES S. UHLHORN, and that the title to the tract of land claimed by her, insofar as the State's claim thereto was concerned, would be vested in her, the said FRANCES S. UHLHORN, and

WHEREAS, thereafter on the 16th day of May, 1956, an order was entered in the cause dismissing the original and amended bill, with prejudice, reciting the agreement to pay said Eight Thousand Five Hundred ($8,500.00) Dollars to the STATE OF TENNESEE in full settlement of the claim of the State to the tract of land involved in said cause, but said order so entered did not vest title in said FRANCES S. UHLHORN to the land claimed by her, as previously agreed, and no conveyance was ever made to her by the State, and

WHEREAS, the STATE OF TENNESSEE received said Eight Thousand Five Hundred ($8,500.00) Dollars from said FRANCES S. UHLHORN, in accordance with said agreement, and

WHEREAS, the land hereinafter described is the same tract of land referred to in said agreement;

NOW, THEREFORE, in consideration of the sum of Eight Thousand Five Hundred ($8,500.00) Dollars heretofore paid to the STATE OF TENNESSEE by FRANCES S. UHLHORN, in accordance with said agreement, the STATE OF TENNESSEE does hereby bargain, sell, convey and confirm unto the said FRANCES S. UHLHORN all its right, title, interest, and estate in and to the following described real estate situated and being in the County of Shelby, State of Tennessee, to wit:

BEGINNING at the southwest corner of the Edward Cherry 195 acre tract, which point is on the old main shore bank of the Mississippi River, as it was at the time of the original survey of said Cherry tract of land running thence south 16 degrees 54 minutes west 8294.6 feet to the old chute of the Mississippi River, commonly known as Old River; thence in a westerly and northwesterly and northerly direction following the meanders of said Old River to a point intersected by the South line of the Louis Reigel 550 acre tract, same being the southwest corner of the said Louis Reigel 550 acre tract; thence East along the south line of said Reigel tract and along a fence line to a point intersecting the old bank of the Mississippi River as it flowed along Island 40 in 1837 at or near the northwestern corner of the Durham 126¼ acre entry; thence in a southerly, or southeasterly and easterly direction along the old bank of the Mississippi River on the west side of Island 40 as it flowed in 1837, following the meanders thereof to the point of beginning.

But at the parties' request, however, there is excepted herefrom, the lands described in the Ed Hoges 185 acre entry as shown in Entry Book 1, page 211, in the Register's Office of Shelby County, Tennessee; the Mike J. Kensear 20.02 acre entry as shown in Entry Book 1, at pages 205–06, said Register's Office; the J. M. Mebin 97 acre, more or less, entry as shown of record in Entry Book 1, at page 224, said Register's Office, and the A. J. Flatt 132.92 acre entry as shown in Entry Book 1, page 222, said Register's Office, to

which entries reference is here made for a more particular description.

TO HAVE AND TO HOLD all the right, title, interest, and estate of the State of Tennessee in and to the aforesaid real estate, together with all appurtances thereunto belonging or in any wise appertaining unto the said party of the second part, her heirs and assigns, in fee simple forever.

WITNESS the signature of the Governor of the State of Tennessee the day and year first above written.

STATE OF TENNESSEE
BY /s/ Buford Ellington
　　Governor
/s/ George F. McCanless
Attorney General
/s/ W. R. Snodgrass
Comptroller
(ACKNOWLEDGMENT)

The above legal description includes all of the land shown on Plat B lying west of the Blue Line between Old River on the south and the Old Bank of the Mississippi River on the north but specifically excludes the Hodge (Hoges) 185 acre tract, the Ikensear (Kensear) 20.5 (20.02) acre tract, the Melvin (Mebin) 97 acre tract and the Flatt 132.92 acre tract. The 200 acres in controversy herein are included in said description and are not thereafter excluded.

The statutory authority relied upon by the State for the execution of said deed is T.C.A. 20–1703 as follows:

20–1703. *Compromise of litigation*—The attorney-general of the state, with the written approval of the governor and the comptroller, may compromise and settle, in so far as the state is concerned, any civil litigation to which the state may be a party, upon such terms as in their opinion may seem to the best interest of the state; and may enter into such agreements in connection therewith, as may be necessary to effectuate the purposes of this section.

Hunter claims the 200 acres as accretions to the Ikensear (Kensear) and Melvin tracts. See Plat B. In his memorandum opinion Chancellor Inman stated that it was not disputed that Hunter owns the fee in said tracts. We cannot concur in that statement, but the same is not essential to the holding of the Chancellor. While we find that there is some question as to the quality of the title of Hunter in the two tracts, for the purposes of this opinion we will assume that Hunter holds fee simple title thereto under its deed of March 2, 1928.

■ The Chancellor found that the accretions had formed prior to the conveyance of the Ikensear and Melvin tracts to Hunter and held that since the conveyance did not describe or purport to convey the accretions, it was ineffective to vest title thereto in Hunter. The legal descriptions of the Ikensear grant and Melvin entry have not varied from those used in the earliest legal instruments in the record, namely, the Ikensear grant of April 9, 1891, and the Melvin entry of March 14, 1901. The Ikensear grant was assigned to Melvin in 1903 and both tracts were thereafter conveyed as hereinbefore set out. No reference is made in any of the conveyances to accretions, and we concur in the finding of the Chancellor to the effect that a substantial portion of the accretionary lands had formed at the time the conveyances were made. We likewise agree that since the conveyances in question did not purport to convey accretions, they were ineffective to pass title to the accretionary land to Hunter. Compare *McClure v. Couch*, 182 Tenn. 563, 188 S.W.2d 550 (1945) and see 78 *Am.Jur.2d* Waters, Sec. 414 (1964) and 93 *C.J.S.* Waters § 76b (1956).

■ We also find significant the legal descriptions of the Ikensear grant and Melvin entry. In the meets and bounds description of the Ikensear grant there is no reference to water generally or to the Mississippi River specifically. The plat referred to (see Plat A herein) clearly shows that no boundary of the tract touches the

Mississippi River at any point. The meets and bounds description of the Melvin entry shows that that tract touches the "water's edge" at one point only. We assume that "water's edge" refers to the Mississippi River, although this is not explicitly stated in the description. In order to establish title to the accretionary land it was incumbent upon Hunter to show ownership of the riparian land, the shore to which the accretions were deposited. Construing the instruments in the light most favorable to Hunter, the most that has been proven is ownership of a tract which touches the Mississippi River at one point only. This foundation is inadequate to support Hunter's claim of ownership of the accretionary 200 acres. Compare *Posey v. James*, 75 Tenn. 98 (1881) and see 93 *C.J.S.* Waters § 8 (1956); 78 *Am.Jur.2d* Waters, Sec. 269 (1964). We, therefore, conclude and hold that Hunter did not take the subject land as accretions to the Ikensear and Melvin tracts.

■ Hunter further insists that it acquired fee simple title to the subject land by adverse possession and the payment of real estate taxes. The Chancellor held that the preponderance of the evidence did not support such an insistence, and we concur in that finding. Title to the subject land has been in litigation since August 8, 1933. Under the circumstances it was incumbent upon Hunter to prove a state of facts existing prior to August 8, 1933, which would support its claim. *Southern Coal and Iron Company v. Schwoon*, 145 Tenn. 191, 239 S.W. 398 (1921). The evidence in the record on this point is extensive and conflicting, and we do not find that it preponderates against the findings of the Chancellor. Accordingly, we find no error in the Chancellor's holding that Hunter did not acquire fee simple title to the subject land by adverse possession and the payment of real estate taxes.

■ The remaining substantial issue raised by Hunter on appeal relates to the validity of the deed under which Uhlhorn claims title. The law in Tennessee is well settled that the plaintiff in an ejectment suit must rely upon the strength of his own title and not upon the weakness of his adversaries' title. *Raines v. Pile*, 182 Tenn. 283, 185 S.W.2d 628 (1945); *Walsh v. Tipton*, 183 Tenn. 28, 190 S.W.2d 294 (1945); *Preston v. Bush*, 56 Tenn.App. 510, 408 S.W.2d 675 (1966); *Demarcus v. Campbell*, 17 Tenn.App. 56, 65 S.W.2d 876 (1933). Hunter's failure to prove title in the subject land renders moot the issue of quality of title, if any, in Uhlhorn except as it applies to Uhlhorn's claim against Hunter for damages.

■ Uhlhorn insists that the Chancellor erred in refusing to award damages as compensation for the value of the timber cut by Hunter's agent. The timber was cut by Shannon Brothers Lumber Company, Inc. prior to May 21, 1961, the date of the filing of Uhlhorn's cross-bill, under a contract with Hunter dated February 16, 1961. The Chancellor held that Uhlhorn could not recover since the timber was cut prior to February 23, 1962, the date of the deed from the State of Tennessee to Uhlhorn. Uhlhorn insists that from May 16, 1956, the date of entry of the "Consent Order Dismissing Original Bill as Amended" setting forth the substance of the settlement agreement with the State of Tennessee, to February 23, 1962, the date of execution of the deed, equitable title, if not legal title, was vested so as to support her claim for damages. We note that said order does not purport to transfer title nor is it more specific than to reflect a "settlement of the claim of the State of Tennessee to the tract of land involved in this case and claimed by the said defendants". The phrase "tract of land involved" refers to the entire area involved in that suit, of which the subject 200 acres is only a fractional part. The reference to "said defendants" relates not only to Uhlhorn but also to four other named defendants as well as the heirs of B. A. Davis. We find this insufficient to es-

tablish equitable title in the subject 200 acres in Uhlhorn so as to support her claim for damages. The Chancellor did not err in dismissing Uhlhorn's cross-bill for damages occurring prior to the date of the deed upon which title is founded.

By so holding we do not condone Hunter's cutting of the timber under the circumstances existing in 1961. Uhlhorn's cross-bill against Hunter and others in the case of *State of Tennessee ex rel. v. C. W. Hunter Company, Mrs. Frances S. Uhlhorn, et al.,* was filed on October 27, 1933. From and after that date Hunter had formal legal notice of the claim of Uhlhorn to the 200 acres as accretions to the Potter 220 acre tract. Hunter answered that cross-bill, and prior to May 31, 1963, its answer did not include an allegation of ownership of the 200 acre tract. The original bill in that case was dismissed in 1956 pursuant to the settlement which contemplated the conveyance of the interest of the State of Tennessee in the subject land to Uhlhorn. Although Hunter did not actively participate in the settlement, as a party to the suit it had notice of the entry of the "Consent Order Dismissing Original Bill as Amended" hereinabove copied. There is no indication that Hunter objected to the dismissal of the original bill on that basis. Then in 1961 after having Uhlhorn restrained by temporary injunction issued in this cause, Hunter proceeded to harvest timber on the land in litigation. The motives of Hunter are highly suspect at best and the act of harvesting the timber under these circumstances is reprehensible. However, applying the rationale in *Clements* to the facts of this case we cannot do other than to hold that at the time in question the interest of Uhlhorn in the subject land was insufficient to support a claim for damages.

It is not necessary that we comment further or otherwise on the deed from the State of Tennessee to Uhlhorn. A determination as to its legal effect is not essential to the dismissal of Hunter's action in ejectment or Uhlhorn's cross-action for damages occurring prior to its execution. We note that in her "Second Amendment to the Amended and Supplemental Cross-Bill" filed herein on March 1, 1963, Uhlhorn, relying upon her deed from the State of Tennessee executed under the authority of T.C.A. 20–1703, prayed that title to the 200 acres be quieted in her. Hunter, in response, insisted that the State of Tennessee was without lawful authority to execute the deed and that said deed is champertous and void. Chancellor Inman did not go beyond the dismissal of the Uhlhorn cross-action for damages and, therefore, failed to address this issue. This is a court of review and we decline to consider this issue for the first time on appeal. In so doing, however, we observe that the same issue is properly before the Chancery Court of Shelby County in the long pending and yet untried cross-action of Uhlhorn against Hunter in the case of *State of Tennessee ex rel. v. C. W. Hunter Company, Mrs. Frances S. Uhlhorn,* no. 39871, from which the conveyance in question arose. That cause is the proper forum for the initial judicial resolution of this issue.

Accordingly, all assignments of error are overruled and the judgment of the Trial Court is affirmed. The costs of appeal will be assessed one-half against the plaintiffs-appellants and their surety and one-half against the defendants-appellants and their surety.

MATHERNE and NEARN, JJ., concur.